ED. KING, Plaintiff in Error, v. GREAVES & RUFF, Defendants in Error.

#### Kansas City Court of Appeals, December 5, 1892.

1. **Sales:** BILL OF SALE, A MORTGAGE: PAROL EVIDENCE: INNOCENT PARTIES. In an action at law parol evidence is admissible to prove that a bill of sale of personal property, absolute on its face, was intended by the parties as a security for a debt, and, where the action is by the grantee against the purchasers of the property with notice of his claim, there are no innocent third parties in the transaction.

2. **Practice, Appellate:** EXCEPTION NOT PRESERVED IN MOTION FOR NEW TRIAL. Though exceptions to the giving of an instruction are saved at the time, yet, unless preserved in the motion for a new trial, they will not be reviewed by the appellate court.

3. **Sales:** ABSOLUTE BILL OF SALE: MORTGAGE: VOID. An instruction, in effect declaring that if a bill of sale, absolute on its face, and not acknowledged or recorded, and no possession had thereunder, was in fact made as a pledge for security of a debt, and was a conditional conveyance to secure the payment of the debt, then it was a mortgage and void, is sufficiently accurate.

4. **Practice, Appellate**: APPELLANT'S ASSENT TO SUBMISSION OF ISSUE: EVIDENCE. A special finding based upon an instruction given without objection supported by evidence must be regarded as conclusive on appellant where there is, as in this case, substantial evidence to support the finding.

5. **Sales**: BILL OF SALE AS MORTGAGE: INTENTION. Whether a bill of sale absolute on its face is a mortgage or pledge, is a question of intention or design of the parties, which should be left to the jury, where the facts as in this case are disputed.

6. ———: ———: SUBSEQUENT AGREEMENT. A bill of sale, absolute on its face, may, by a subsequent parol agreement with sufficient consideration, be so modified as to render the transaction in its entirety a mortgage.

7. ———: ———: INSTRUCTIONS: SPECIAL FINDING. An instruction failing to submit to the jury the question of intention as to whether a bill of sale should be held as a mortgage or not is erroneous, and would be reversible in this case, but that on a special issue submitted without objection the jury specially found the bill of sale was intended as a mortgage.

*Error to the Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

AFFIRMED.

*J. F. Orr* and *Samuel P. Sparks,* for plaintiff in error.

(1) It is not competent in a suit at law to show that a deed, absolute in its terms, is a mortgage by parol evidence. *Hogel v. Lindell,* 10 Mo. 483; *Montaney v. Rock,* 10 Mo. 506; *Johnson v. Huston,* 17 Mo. 58; 1 Jones on Mortgages [7 Ed.] sec. 282, note 1; *State v. Koch,* 40 Mo. App. 635, 640; *Harper v. Ross,* 10 Allen, 332; *Bryant v. Crosby,* 36 Me. 562; *Hartshorn v. Williams,* 31 Ala. 149. It is a proceeding cognizable alone in a court of equity, and is sustained on the ground of fraud, accident or mistake. It is only in equity, and in a proceeding to redeem, that parol evidence is admissible to establish it. 1 Jones on

Mortgages, secs. 284–287; *Schradski v. Albright*, 93 Mo. 42; *Link v. Harrington*, 41 Mo. App. 641; *O'Neill v. Capelle*, 62 Mo. 202. (2) To constitute a deed absolute in its terms a mortgage, it is essential to establish that the defeasance had its inception contemporaneously with the making of the instrument, and not upon a subsequent agreement. 1 Jones on Mortgages, secs. 245, 246, 247; *Turner v. Kerr*, 44 Mo. 429; 1 Jones on Mortgages, sec. 246; *Vasser v. Vasser*, 23 Miss. 379. (3) To convert an absolute deed into a mortgage by parol testimony, the evidence must be clear and convincing, and the terms of the parol defeasance must be established; mere declarations must be corroborated by facts. *Worley v. Dryden*, 57 Mo. 226; *Ringo v. Richardson*, 53 Mo. 285; *Turner v. Kerr*, 44 Mo. 429; *Johnson v. Quarrels*, 46 Mo. 423; *Stevenson v. Adams*, 50 Mo. 475.

*O. L. Houts*, for defendants in error.

(1) The special finding of the jury, based upon an instruction given without objection on the part of appellant, supported, as he admits, by evidence, rendered in an action at law, is conclusive upon appellant in this court. *Walton v. Railroad*, 40 Mo. App. 544. Upon this finding the judgment must be affirmed. The jury having found that the instrument, if executed, was in the form of a pledge, they found that plaintiff never had an absolute bill of sale, and, therefore, never had any title to the wheat in question, and any error, therefore, that the court may have committed in the trial of the question, whether a bill of sale, absolute on its face, was a mortgage, is wholly immaterial. (2) Our courts, however, have held, without conflict, that since the adoption of the code it was competent in an action at law to show by parol evidence that an instru-

ment absolute on its face was intended by the parties
as a security for debt—a mortgage. *Quick v. Turner*,
26 Mo. App. 36; *Bassett v. Glover*, 31 Mo. App. 156;
*Newell v. Keeler*, 13 Mo. App. 189; *Mfg. Co. v. Steele
& Walker*, 36 Mo. App. 496; *King v. Greaves & Ruff*,
42 Mo. App. 168. (3) The instrument was not
recorded. There was no pretense that plaintiff ever
had possession of the wheat. On the contrary he tes-
tified himself that he never had possession, but that it
was by agreement to remain in Inskeep's possession,
where the evidence shows it did remain. The instru-
ment, therefore, if a mortgage, was "invalid against
any other persons than the parties thereto"—King and
Inskeep. Was invalid against defendants. Revised
Statutes, 1889, sec. 5176. Section 5178 does not apply
in this case, because it was tried upon the theory that,
if the transaction was a sale, defendants were liable.

SMITH, P. J.—The plaintiff and one J. B. Ins-
keep, in November, 1886, lived in Kingsville. Inskeep
owned nearly a two-thirds interest in about one hun-
dred and ninety-five acres of wheat which he had sown;
one hundred acres on the lands of W. G. King, about
sixty acres on the land of Mr. French, and about thirty-
five acres on the land of Dr. King. A son of J. B.
Inskeep, Harvey Inskeep, had a two-thirds interest in
forty acres of wheat which he had sown on the land of
Mr. French. J. B. Inskeep, with his sons, were grad-
ing with mule teams in Kansas City, the remainder of
the family remaining at home in Kingsville. His mules
at Kansas City were advertised and sold under execu-
tion. Plaintiff went up on the day of sale, and was
present at the sale. Plaintiff testified that at that time
J. B. Inskeep owed him $709.83 on open accounts and
promissory notes. He states that he met J. B. Inskeep
at that time and demanded settlement; he did not

take the notes and accounts with him, but a memorandum of them; that Inskeep told him he had no money, but offered to transfer to plaintiff the wheat. Plaintiff stated that he accepted the transfer of the wheat, took a bill of sale thereof, described in his abstract, including the whole two hundred and thirty-five acres of wheat, that of Harvey Inskeep as well as that of J. B. Inskeep. The bill of sale was signed by J. B. Inskeep. Plaintiff's statement in his own language as to what occurred upon the signing of the bill of sale was: "I believe I said, 'J. B. Inskeep, I bought this wheat, now I've got to have it cut. Will you cut it for me?' and he said he would. He said: 'Ed, I will cut the wheat and thresh the wheat if you will give me all over what you agreed to give me for the wheat; $709.' I agreed to that. I told him, 'That's all I could ask; I don't want to speculate on this wheat, Mr. Inskeep.' I told him I just wanted my debt, and that was all I was aiming to get. That was $709. I made the agreement with him at the time that he could cut the wheat and thresh it, and he was to have all over the debt. That was the transaction. He told me some time that the wheat would amount to twice as much as what the debt amounted to. I believe it was in the trade. I told him I didn't want to speculate on it, just simply wanted what he owed me. That was the bargain made between me and Inskeep in Kansas City, just before we parted, in the evening about four o'clock. That was the final bargain and arrangement between Inskeep and I."

"Q. Now, then, if Inskeep had paid you $709, this wheat would have been his under your arrangement? A. It would have been optionary with me.

"Q. You would not have wanted the wheat after he paid you the debt? A. No, I think not.

"*Q.* Then if he paid you the money—received the money from any other source and paid you the money —the wheat would have been his? *A.* I would have sold him the wheat at any time for the amount he owed me.

"*Q.* If after he cut and threshed the wheat he had sold enough of it to pay you $709, the balance of the wheat was his? *A.* Yes, sir, that was the agreement."

Plaintiff gave Inskeep no receipt against the indebtedness and did not surrender or cancel or enter any credit on the notes or accounts, and still holds them in his possession. J. B. Inskeep returned to Kingsville in December following, and after ten days or two weeks died, and his wife administered on the estate and filed an appraisement of the personal effects thereof, which was admitted on trial. Plaintiff lived near her, had a number of conversations with her about the wheat, and the settlement which he claimed, and knew she administered on the estate, and did not surrender or offer to surrender to her the notes and accounts, and gave no reason for not doing so, though asked at the trial. The wheat was never in the possession of plaintiff. Plaintiff testified that it was to remain in the possession of J. B. Inskeep under the agreement. The evidence showed that it did remain in his possession until his death, and afterwards was in the possession and under the control of the administratrix and her boys, and was by them harvested, threshed, hauled to market and sold to defendants, who paid to Mrs. Inskeep the market price therefor. That the amount realized for this interest was $1,100 or $1,200. Plaintiff, some six weeks before the trial of the cause, and some two years after the wheat was threshed, and after repeated denials of his liability, paid for the threshing of the wheat grown on the land of W. G. King. Plaintiff testified that when this wheat was being delivered to defendants he

demanded and was refused payment for two-thirds thereof, and for this he sues nearly two years after. This bill of sale plaintiff did not produce on trial, stating that he had lost it, but that it was as follows:

"KANSAS CITY, Mo., November 27, 1886.

"*Know all men by these presents:* That I, J. B. Inskeep, do on this day and date sell to E. King all my two-thirds interest in two hundred and thirty-five acres of wheat now growing on the King and French lands in Kingsville township, Johnson county, Missouri. Consideration, $709.

"J. B. INSKEEP."

It was not acknowledged or recorded.

Defendants introduced testimony tending to show that no such instrument was ever executed or delivered. The evidence of one witness that was present at the time plaintiff claims to have received it, and the evidence of a number of witnesses as to declarations and statements made by plaintiff himself; two of whom testified—Mrs. Inskeep and Samuel Inskeep—that plaintiff at one time told them he had a mortgage on the wheat, and when they demanded to see the mortgage he stated that he had no mortgage, but a verbal agreement made in the presence of witnesses. To others he stated that he had a claim on the wheat, for Inskeep owed him; and to still others he stated that he had no interest in the wheat except as the agent of W. G. King, the landlord. The uncontradicted evidence shows that he permitted Mrs. Inskeep and her boys to harvest and thresh the wheat ready for market. The plaintiff sued the defendants for the market value of eight hundred and three bushels of wheat which Mrs. Inskeep had sold and delivered the defendants at their mill. The plaintiff notified the defendants of his claim before they had paid Mrs. Inskeep for all the wheat.

The defendants had judgment, and the plaintiff has appealed.

I.   The first ground upon which the appealing plaintiff challenges the judgment against him is that the trial court erred in the admission of parol evidence to prove that the bill of sale from Inskeep to plaintiff was a mortgage.   This must be held to be untenable.

The rule, whether right or wrong, seems now settled in this state, that in an action at law parol evidence is properly admissible to prove that a bill of sale of personal property, absolute on its face, was intended by the parties thereto as a security for a debt—a mortgage.   *Wood v. Matthews*, 73 Mo. 477; *State ex rel. v. Bell*, 2 Mo. App. 132; *Newell v. Keeler*, 13 Mo. App. 189; *Quick v. Turner*, 26 Mo. App. 36; *Bassett v. Glover*, 31 Mo. App. 189.

This is an action by the grantee in the bill of sale against purchasers of the property with notice of the grantee's claim, so that there are no innocent third parties in the transaction, and for that reason the rule announced in *State v. Koch*, 40 Mo. App. 635, has no application here.

II.   The court on its own motion gave an instruction, whereby it told the jury that if Inskeep signed and delivered to plaintiff the instrument under which plaintiff claims the title to the wheat, the verdict should be for him, provided they should further find that said instrument was not intended as a pledge or mortgage for the security of said consideration or any part thereof as defined in other transactions.   While the plaintiff excepted to the giving of this instruction, no complaint was made of the action of the court in that regard in the motion for a new trial, so that the instruction is not, for that reason, subject to review by us.   *State v. Nelson*, 101 Mo. 477.

III. The defendants' third instruction, in effect, declared to the jury that if they believed from the evidence that the said instrument was, in fact, made by way of pledge of the wheat to plaintiff for the security of an indebtedness by Inskeep to plaintiff, and was a conditional conveyance of the wheat designed by them as a security for the payment of said indebtedness, then it was a mortgage and void. This definition is sufficiently accurate. *Mills v. Williams*, 31 Mo. App. 447; *Bender v. Markle*, 37 Mo. App. 235.

IV. The court, without the interposition of an objection by plaintiff, further instructed the jury to answer this question in their verdict: "Was or was not the instrument mentioned in the evidence (if the jury find such instrument was executed by Inskeep to plaintiff) intended at the time of its execution as a mortgage or security for an indebtedness due and owing by Inskeep to plaintiff?" The jury answered this interrogatory in the affirmative. This special finding based upon an instruction given without objection, supported by evidence, must be regarded as conclusive on the plaintiff, as there was substantial evidence to support the finding of the jury. *Walton v. Railroad*, 40 Mo. App. 544; *Dean v. Chandler*, 44 Mo. App. 338. Besides this, the testimony of the plaintiff himself, with that of the other witnesses delivered to the jury, afforded clear and convincing proof that the instrument was not intended to be absolute in its character as recited on its face. The retention of the notes of Inskeep by plaintiff, after the execution and delivery of the instrument, was a most potent circumstance to prove that the relation of creditor and debtor continued to exist between them thereafter. And, too, the further fact that plaintiff never informed his partner, McConnell, of the purchase of the wheat is not without significance.

V. Plaintiff further complains of the action of the court in giving the defendants' fourth instruction which declared to the jury that, although they may believe from the evidence in this case that J. B. Inskeep was indebted to the plaintiff in the amount claimed by him, and that Inskeep executed and delivered the instrument described by the plaintiff, yet, if the jury further believe, from the weight of the evidence, that upon the same day it was agreed between Inskeep and plaintiff that Inskeep was to remain in possession of, harvest and thresh said wheat, and after the same was marketed the plaintiff was to receive of the proceeds said amount of his indebtedness, and Inskeep the balance, if any, then said transaction was in the nature of a pledge or mortgage, and void as to defendants. The law, as we have already seen, is that an instrument purporting to convey personal property absolute on its face may be shown by parol evidence to have been *intended* by the parties thereto to be a mortgage. Whether such an instrument, though absolute in its character according to its face recitals, is a mortgage or pledge is a question of intention or design of the parties, which should be left to the jury where the facts as in this case are disputed. This instruction ignores the essential element of the *intention or design* of the parties to the transaction.

It will not do to assume as a matter of law that, if all the facts included in the hypothesis of this instruction are true, the transaction was necessarily a mortgage without reference to the intention of the parties thereto; for it may well have been that after the sale of the wheat by Inskeep to plaintiff that the latter hired the former to harvest it for the excess that it would bring when marketed above its cost to the plaintiff. This may have been the character of the transaction. Although this may have been so, yet,

under the instruction, the jury were authorized to find such a transaction a mortgage. It is, therefore, apparent that the character of the transaction must be determined by what was the intention of the parties to it. If the facts had been undisputed, then the court should have determined the question as one of law, but as they were disputed it was one to be left to the jury. They should determine whether such an inference of fact is deducible from the evidence.

But it is said that, since the parol part of the transaction took place some hours after the execution and delivery of the written instrument, the former in no event should constitute a defeasance to the latter. The law has long been settled in this state that a parol agreement may be engrafted on a written one, so as to alter and modify the terms of the latter. *Bunce v. Beck*, 43 Mo. 266; *Heming v. Ins. Co.*, 47 Mo. 425; *Lanitz v. King*, 93 Mo. 513. So at common law a valid mortgage of personalty may be made without writing. Jones on Chattel Mortgages, secs. 2, 69; *Hughes v. Menefee*, 29 Mo. App. 192.

Now, if Inskeep made an absolute sale of the wheat to plaintiff, and it was agreed further by parol that Inskeep should not deliver but should retain the possession of the wheat, and should harvest and market it, and out of the proceeds received should pay the plaintiff the amount of the debt of the latter and retain the balance, if any, himself, it would be evidence which might be received by the jury along with the other pertinent evidence in the case from which they might infer the transaction to have been intended as a mortgage. Such a parol agreement, standing by itself, would rest upon a sufficient consideration to bind the parties thereto. It is quite difficult to see why such a valid agreement may not have the effect to so alter and modify the terms of the written instrument as to

render the transaction in its entirety a mortgage, provided such was the intention of the parties thereto.

On account of this vice in defendant's fourth instruction, we should feel bound to reverse the judgment were it not for the fact that the jury, in response to an interrogatory to them propounded by the court under an appropriate instruction, specially found from the evidence that the instrument in question was intended at the time of its execution to be a mortgage, so that the giving of the said erroneous instruction worked no injury to the complaining plaintiff. It results that the judgment must be affirmed. All concur.