FLYNN *v.* HOLMES.[1]

1. MORTGAGES — DEED ABSOLUTE IN FORM — OPERATION AS MORTGAGE — TITLE OF GRANTOR.

A deed absolute, given as security, does not have effect to divest the legal title subject to an equity to compel a reconveyance, upon redemption, enforceable only in a court of equity, but the legal title remains in the mortgagor, and is susceptible of recognition and protection by a court of law.

2. SAME — TITLE OF MORTGAGOR — SALE ON EXECUTION.

The title of the mortgagor to land which has been conveyed by a deed absolute in form, but intended to operate as a mortgage, is a legal title which may be levied upon and sold on execution against the mortgagor.

3. SAME — RIGHTS OF EXECUTION PURCHASER.

The purchaser on execution of the interest of the grantor in a deed absolute, intended to operate as a mortgage, takes a legal

[1] Rehearing denied March 6, 1907.

interest or title and is not obliged by section 9167, 3 Comp. Laws, to file his bill in aid of execution to ascertain the equities of the parties.

Appeal from Kalamazoo; Adams, J. Submitted April 18, 1906. (Docket No. 82.) Decided July 23, 1906.

Bill by Lawrence Flynn against Andrew J. Holmes to remove a cloud from the title to land. Defendant filed an answer in the nature of a cross-bill asking for a writ of assistance. Complainant demurred to the cross-bill and filed a plea. From an order overruling the demurrer and plea, complainant appeals. Affirmed. (See 142 Mich. 373.)

*William A. Luby*, for complainant.

*Osborn & Mills*, for defendant.

HOOKER, J. The complainant's bill was filed to remove a cloud from his title to land, and to enjoin defendant from taking steps to obtain possession under a sheriff's deed. Briefly stated, the facts alleged are that on October 27, 1903, the defendant recovered a circuit court judgment against the complainant for $434.75 damages and $28.10 costs. Execution was levied on the premises, a city lot, and dwelling thereon, occupied by the defendant at the time as his homestead. The sheriff caused an appraisal to be made, as required in cases of levies upon homesteads. It was appraised at $2,350. A copy of the appraisal and a demand of payment of the amount due within 60 days was then made by the sheriff upon the complainant. On August 28, 1903, the premises were sold upon execution sale for $2,300, and the certificate was duly filed. Several irregularities in the proceedings are alleged, including the charge that the amount of complainant's exemption was never paid to him, and also that the proceeding was fraudulent. December 8, 1904, a sheriff's deed of the premises was made, and is now on file and recorded in the register's office, constituting the

cloud referred to. The bill contains only the following allusion to the nature of complainant's interest, or title to the premises, viz.:

"That at the date of the said levy there was unpaid upon the contract of purchase, by virtue of which your orator holds said premises, the sum of more than $300.

"That after the levy of the said execution and before the said pretended sale of the said premises your orator paid upon said contract of purchase the sum of more than $100, and he alleges that by such payment he increased his interest in the said lands and hereditaments, and that the interest so acquired could not be sold by the said Shields under and by virtue of the said levy.

"That after the said levy and before the said sale your orator alleges that he acquired a further interest in the said premises by improvements made thereon, and that the interest so acquired could not be sold by the said Shields under and by virtue of the said levy."

It alleges that the defendant has instituted no proceedings in aid of execution, or otherwise, to ascertain and determine the rights, titles, and equities of the complainant in the premises, either before or after the sale. It prays that the proceedings be decreed to be void, set aside, and vacated, and that defendant be restrained from any attempt to acquire possession under them.

The defendant filed an answer denying most of the allegations of the bill. It prayed the benefit of a demurrer to the bill for want of equity, and for the reason that complainant should be held bound by the return of the sheriff, and may not deny or contradict the same. He alleged, by way of cross-bill, that at the time of the levy the complainant was the real owner of the premises; that on or about the day of the sale an arrangement was made by the defendant with the sheriff, whereby and under the terms of which the defendant procured certificates of deposit, aggregating $1,500, and placed them in the hands of his solicitors to be held for and on account of the sheriff and as his depositaries, to be paid to the complainant by the sheriff whenever he would accept the same as his ex-

emption, which fund has been kept subject to the demand of the sheriff, of which complainant was notified. It is alleged, further, that before the levy was made, the complainant had borrowed a sum of money from Charles F. Davis, and, to secure the repayment thereof, gave him a deed of the property and took back from him a land contract, as a mere security, for the fraudulent purpose of covering up said property, and causing it to appear of record that Davis was the owner, when he was not and has never claimed to be, complainant always having claimed it to be his homestead; that, after the sale, a tender of the exemption money was made to complainant, who did not refuse to receive it, but asked for time to determine whether he would accept it, and he has not since notified defendant or the sheriff of his determination; that, although the period of redemption has expired, complainant withholds possession from defendant against his rights. It is further alleged that all of the questions raised by the bill have been litigated and determined between the parties and are res adjudicata, and complainant is barred thereby from any right to relief in this case. The cross-bill prays that it be decreed:

(1) That the levy and sale are regular and valid; (2) that at the time of the levy, complainant was the owner of the land and that Davis had a mere security thereon, and was not the owner; (3) that as between complainant and defendant the deed to Davis was and is fraudulent and void; (4) that defendant is entitled to possession of the premises, and that complainant withholds the same from him unlawfully; (5) that complainant be required to yield possession and that a writ of assistance issue; (6) general relief.

To this answer and cross-bill complainant demurred:

(1) Generally; (2) because the defendant has not attempted to have his rights determined within a year after the sale as required by statute; (3) because Davis is a necessary party.

This demurrer was filed March 16, 1905. On March 18,

1905, complainant caused a plea to be filed, alleging that defendant did not make known, at the time of the sale, the true condition of the title. The plea and demurrer were overruled, and the complainant has appealed.

The case may be resolved into the following questions:

1. Was Davis a necessary party to the cross-bill?
2. What was the nature of the complainant's title which defendant attempted to levy upon and sell?

These questions can profitably be discussed together. We are justified by the demurrer in assuming that complainant, owning the premises in fee, mortgaged them to Davis to secure an indebtedness by giving him a deed absolute, though retaining the possession of the premises. It does not appear that the deed was recorded. The effect of this instrument upon its face is to divest the title of the grantor and convey it to the grantee. To sustain defendant's contention, we must be able to say that this deed did not have that effect, because the contract, of which it was the culmination, was that it should not convey the legal title, but only a right by way of security—in other words, that it was a mortgage, sometimes called an "equitable mortgage."

It is said on behalf of the complainant that the execution was levied upon an equitable interest, and therefore a bill should have been filed in aid of the execution under 3 Comp. Laws, § 9167. The defendant denies the premise, insisting that the levy was upon a legal interest, and that therefore no bill was necessary. Upon the theory that this was a deed or a mortgage in fraud of creditors, equity alone would have jurisdiction to set the instrument aside, in aid of the execution. On the other hand, if the instrument was a mortgage, as between the parties, it is said that the legal title was still in the mortgagor, and that it might be levied upon, the purchaser taking subject to the mortgage. So the matter is resolved into the question, does a deed absolute, where given as security, have the effect to divest the legal title subject to an equity to compel a reconveyance, upon redemption, enforceable only in a

·court of equity, or is the effect of such a deed limited by ·the fact that it is made and delivered as security merely, so that it has the same effect as a deed containing the defeasance—i. e., a mortgage—leaving the legal title in the mortgagor, susceptible of recognition and protection by a court of law.

Logically it would seem that the writing should not be varied by parol testimony, in the absence of fraud, either at law or in equity; but the cases are numerous where it has been held that the fact may be shown in equity, ·though there is no fraud or mistake shown in the procurement of the deed, and it is too late to question them. See *Wadsworth* v. *Loranger*, Har. Ch. (Mich.) 113, where, ·on a bill to redeem, it was said by the Chancellor:

" That a deed absolute in terms may be proved by parol to have been intended by the parties to operate only as a mortgage, cannot admit a doubt."

In *Swetland* v. *Swetland*, 3 Mich. 482 (a bill to redeem), a similar holding was made.

In *Fuller* v. *Parrish*, 3 Mich. 211, it was held, in an action at law, that " parol evidence is admissible, in a court of law, to show that a bill of sale absolute on its face was intended as a mortgage." GREEN, P. J., said:

" It is conceded, on the part of the plaintiff in error, that, in a court of equity, it would be entirely competent ·to show by parol proof that a deed, absolute on its face, was intended as a mortgage, and that there effect would be given to it according to the true intent of the parties. This has been too long and too well settled, and too distinctly recognized by our own courts, to admit of any question. But it is contended that it is not competent in a court of law; and why not? So far as the statute of frauds may be supposed to affect the question, that is equally binding upon and receives the same construction in a court of chancery as in a court of law; and so it is with that most familiar and well-established rule that 'parol and contemporaneous evidence is inadmissible to ·contradict or vary the terms of a written instrument.'"

In *Cleland* v. *Taylor*, 3 Mich. 201, it was held:

"A fraudulent deed may be as fully and effectually set aside in an action of ejectment in a court of law, as upon a bill of complaint in a court of equity."

In *Emerson* v. *Atwater*, 7 Mich. 22 (an equity case), MANNING, J., said:

"It is objected to the relief given complainant in the court below that the case made by the bill is one of express trust, and that, by statute (2 Comp Laws 1857, § 3177), an express trust can be created by a deed or conveyance in writing only.

"It is also objected that, if the case shows an absolute conveyance, but intended by the parties as a security or mortgage only, the deed, being absolute on its face, cannot be turned into a mortgage by parol proof, or by proof of a contemporaneous parol agreement.

"The bill makes a case of conveyance in the nature of a mortgage, with power to Atwater to sell a part or the whole of the premises, to pay the incumbrances, and what Emerson was owing him; reserving the surplus, if any, to Emerson. This view does not wholly extricate the case from the first objection, if there be any force in that objection; for the statute that requires express trusts to be created by deed or conveyance in writing includes powers 'over or concerning lands,' as well as express trusts.

"In *Wadsworth* v. *Loranger*, Har. Ch. (Mich.) 113, Chancellor FARNSWORTH says, 'that a deed, absolute in its terms, may be proved by parol to have been intended by the parties to operate only as a mortgage, cannot admit of a doubt'—referring to *Strong* v. *Stewart*, 4 Johns. Ch. (N. Y.) 167, *James* v. *Johnson*, 6 Johns. Ch. (N. Y.) 417, and *Van Buren* v. *Olmstead*, 5 Paige (N. Y.), 9. In that case there was a parol cotemporary agreement, as in the case before us.

"In *Fuller* v. *Parrish*, 3 Mich. 211, parol evidence was admitted to show a bill of sale, absolute on its face, was intended by the parties to be a mortgage. That was a case at law, and it was admitted, by the plaintiff in error, that such evidence would be competent in a court of equity. GREEN, P. J., in giving the opinion of the court, says:

"'It is conceded, on the part of the plaintiff in error, that, in a court of equity, it would be entirely competent to show by parol proof that a deed, absolute on its face, was intended as a mortgage, and

that *there* effect would be given to it according to the true intent of the parties. This has been too long and too well settled, and too distinctly recognized by our own courts, to admit of any question.'

"And in *Swetland* v. *Swetland*, 3 Mich. 482, it seems to be taken for granted as the law, both by counsel and court. WING, J., says:

"'If it appeared the debt due from Eli to William was not extinguished by the delivery of the deed to William, or that the deed was made for the purpose of securing the payment of a debt, it would be our duty to declare it to be a mortgage.'

"We refer to these cases to show the general understanding of the bench and bar on this subject, and the injustice that would be done by overruling, at this late day, the case of *Wadsworth* v. *Loranger*, to those who may have looked to that case for the law, and have acquired rights under the law as there laid down. This consideration, of itself, if we believed that case to be erroneous in principle, which we do not, would cause us to hesitate long before overruling it, believing it would be both better and safer to leave it to the legislature to correct the error, than to undertake it ourselves, as all intervening rights would, in that case, be saved, and injustice be done to no one."

See *Hill* v. *Goodrich*, 39 Mich. 440; *Hunt* v. *Middlesworth*, 44 Mich. 451; *Hurst* v. *Beaver*, 50 Mich. 614; *Wolf* v. *O'Connor*, 88 Mich. 132 (13 L. R. A. 693); *Clark* v. *Landon*, 90 Mich. 90; *Pinch* v. *Willard*, 108 Mich. 208. In the latter case, involving a bill of sale absolute, many cases not specifically mentioned in this opinion are cited.

It is held in New York that the effect of a deed absolute, by way of security, is to create a lien upon the premises, by way of mortgage, and that it does not divest the legal title of the mortgagor, there being no difference in that respect from a case where the defeasance is expressed in the deed, in a separate instrument, or where it rests in parol. In *Shattuck* v. *Bascom*, 105 N. Y. 39, the plaintiff sought to recover a quantity of the hemlock bark which defendant had peeled from trees on a certain parcel of land. The defendant answered, claiming title to the

land, and therefore to the bark.' It was undisputed that the defendant had the title, unless it was defeated by a tax sale and deed to the plaintiff's father. Some time previous to the bringing of this action, the defendant had quitclaimed the premises to Coleman, and he began an action against plaintiff's father, under whom the plaintiffs claim, to set aside the tax deed. This resulted in favor of the defendant therein. After the entry of that judgment, and before the commencement of the action before the court, Coleman reconveyed the land to the defendant, and upon the trial it was undisputed that the deed to Coleman from the defendant was given as security, and was, in fact, a mortgage. The court said:

"Although the conveyance from the defendant to Coleman was in form a deed, it was in fact a mortgage, and had all the incidents of a mortgage. Coleman could not, upon that deed, have maintained an action of ejectment against his grantor or any other person. All he acquired by the deed was a lien upon the land for the security of his debt, and upon payment of the debt his interest in the land and his lien thereon would absolutely cease. Reconveyance by him to this defendant was not necessary to reinvest him with the absolute title, and was necessary only to clear up the record title. *Murray* v. *Walker*, 31 N. Y. 399; *Horn* v. *Keteltas*, 46 N. Y. 605; *Carr* v. *Carr*, 52 N. Y. 251; *Morris* v. *Budlong*, 78 N. Y. 543. Therefore the defendant did not, in any sense, take his title from Coleman, but his title was anterior to any interest which Coleman had in the land; and the legal title was in him at the time of the pendency of the action of *Colman* v. *Shattuck*, 2 Hun (N. Y.), 497. He was not a party to that action, and it was not carried on at his instance, or for his benefit, and therefore he is not bound or estopped by the judgment rendered therein. It would be quite a novel doctrine to hold that a mortgagor is bound and estopped by a judgment rendered in an action by the mortgagee against some other person to which he was not a party. It was therefore open to the defendant upon the trial of this action to assail the title of the plaintiffs."

In *Barry* v. *Insurance Co.*, 110 N. Y. 1, an action was brought upon a policy of insurance which contained a

condition that if the property insured should be sold or transferred, etc., it should avoid the policy. Two absolute deeds of the same were shown, but it was proved that the same were given as security, and were, in fact, mortgages. The court said:

"'The precise and only question in the case is, What effect does the law give to a deed, absolute in form, but which, in fact, is given as security for a debt? Is it a conveyance of title or simply a chattel interest incapable of affecting the title, except through legal proceedings to enforce the collection of a debt? It seems to us that the courts below have failed to appreciate the effect produced by the abolition of the distinction between law and equity, and the more recent decisions in this State depriving a mortgage of the characteristics of a conveyance. The cases are very numerous in our reports, and so familiar to the profession that we are surprised at the necessity, at this date, of referring to them at all. We will, however, cite a few of the cases showing that it has been the settled law for many years that a deed, though absolute in form, if given as security for a debt, is, to all intents and purposes, both at law and in equity, a mortgage only. The case of *Murray* v. *Walker*, 31 N. Y. 399, was in ejectment by one holding a patent from the State acquired under a certificate of purchase assigned to him, by the purchaser from the State, as security for a loan, against a tenant of one who had acquired the rights remaining in such assignor after the assignment. It was held that the patent, although absolute in form, was received by the patentee as security only, and that the action could not be maintained, Wright, J., saying:

"'A deed or conveyance absolute on its face, if really only intended to secure a debt, is deemed, in equity and at law, a mortgage, though the defeasance is by parol.'"

As early as the case of *Hodges* v. *Insurance Co.*, 8 N. Y. 416, it was held that, as the deed was given as security for a debt, the title to the property did not pass, the grantor therein remaining the legal owner of the property, and the fact might be shown by parol. See, also, *Thorn* v. *Sutherland*, 123 N. Y. 241; *Macauley* v. *Smith*, 132 N. Y. 532; *Nicklin* v. *Betts Spring Co.*, 11 Or. 406;

*Dobbs* v. *Kellogg*, 53 Wis. 448; *King* v. *Greaves*, 51 Mo. App. 534; *O'Neill* v. *Murry*, 6 Dak. 107; *Meyer* v. *Elevator Co.*, 12 S. Dak. 172.

We are aware that there are authorities that hold that a court of equity only can declare a deed absolute upon its face to be a mortgage. In those States which adhere to the common-law rule that the mortgage is a deed and passes the title conditionally, such a holding should be expected, for the reason that the legal title had passed out of the mortgagor.

In the case of *Ferris* v. *Wilcox*, 51 Mich. 109, there is language possibly implying that one claiming against a deed absolute, is entitled to the rights of a mortgagor in equity *only*. But if the learned jurist intended to lay down such a rule, which was unnecessary to a disposition of the case and which is not certain, he apparently rested it upon the proposition that only equity could admit parol evidence to show a contract of defeasance and a recognition of the doctrine that the title actually passed by the deed. We find no other case in this State casting doubt on the earlier cases cited, and these have been approved in many cases, as we have already shown. We will refer to some cases relied on by the appellant. The case of *Jeffery* v. *Hursh*, 42 Mich. 564, is not necessarily antagonistic to the rule discussed here. The question was one of right of possession merely, and Mr. Justice GRAVES said:

"Admitting that in fact the absolute deed from Mrs. Hursh was intended as a mortgage, it was no defense against plaintiffs' action for possession, and they were entitled to prevail, notwithstanding, according to her construction of the transaction, her remedy would be in equity, and not by ejectment."

*Messmore* v. *Huggard*, 46 Mich. 564, does not dispose of this question. There the creditor attacked the alleged mortgage as fraudulent and void as to him, and it was held he must go into a court of equity to try such a question, for reasons there given, which we need not repeat. That is a different case from one where the creditor lev-

ies only on the equity of redemption and sells only that, a practice justified by the case of *Gorham* v. *Arnold*, 22 Mich. 247, where the distinction is shown. The late case of *Daniel* v. *Palmer*, 124 Mich. 335, was also an attack upon a conveyance, valid between the parties, for fraud. This deed is not valid as an absolute conveyance between the parties, and is not attacked for fraud.

In the light of the authorities cited, we conclude that this conveyance was a mortgage; that the title (commonly called the equity of redemption) was the legal title subject to the lien of the mortgage; that it was subject to levy and sale, as all of the interest of the mortgagor. The appellee purchased it, and in doing so took it subject to the outstanding mortgage in the hands of Davis, from which he may redeem, failing in which Davis may foreclose. It is true that the bill alleges that the mortgage was fraudulently made, but the record shows that the appellee has not asked that it be set aside, or made Davis a party, which there was no occasion to do. The answer demurred to shows a tender of the homestead exemption.

The decree will be affirmed, with costs of both courts.

CARPENTER, C. J., and MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.