## ROHRABACHER *v.* WALSH.

1. JUDGMENT—COLLATERAL ATTACK—ATTORNEY AND CLIENT.

   A judgment is not subject to collateral attack because an attorney who appeared for a defendant served with process had no authority to act.

2. BILL IN AID OF EXECUTION—LIMITATIONS.

   Although under 3 Comp. Laws, § 9167, a bill in aid of an execution must be filed within a year after levy, a bill which may be treated as a creditor's bill is not barred by the act.

3. PLEADING—EQUITY—ANSWER—STATUTE OF LIMITATIONS.

   It was a sufficient claim in the answer that suit was barred by the statute to aver that "on account of the time which has elapsed since the procuring of said judgments, the issuing of said execution and levying on said real estate, the complainants are debarred and estopped from pursuing this remedy," when the dates were set up in complainant's bill..

4. FRAUDULENT CONVEYANCES—DEEDS.

   Where defendant and his wife, several years before he became indebted or insolvent, conveyed by warranty deed to their son, who afterwards lost the instrument, real property which was later deeded by a separate instrument to the grantee to whom it was in the meantime assessed and by whom it was cared for, cropped, and who paid the taxes, no fraud was made out.

5. CREDITORS' SUIT—PAYMENT INTO COURT—EQUITY.

   Over money paid into court by defendant in a creditors' suit in case complainants cared to accept the sum in full of their claim, the trial court had no jurisdiction, and the fund was properly withdrawn by defendant.

6. COMPROMISE AND SETTLEMENT — JOINT DEBTORS — JUDGMENT — PART SATISFACTION.

   After a compromise with several judgment debtors of their separate liability upon a judgment against them and others, who did not join in the settlement, the remaining debtors were by statute liable only for their proportionate share of the joint judgment. 3 Comp. Laws, § 10449.

7. JUDGMENT—JOINT LIABILITY—BILLS AND NOTES.

   A judgment in an action at law upon a joint and several obligation becomes joint against all the defendants.

Appeal from Osceola; Withey, J. Submitted December 14, 1911. (Docket No. 54.) Decided May 3, 1912.

Bill by Andrew Rohrabacher and others against Mike Walsh and others for a decree in aid of execution, discovery of assets, and other relief as judgment creditors. From a decree for complainants, both parties appeal. Modified and affirmed.

*Lyon & Moinet*, for complainants.

*B. N. Savidge*, for defendants.

STONE, J. This is a combined bill in aid of execution and creditor's bill. On June 21, 1904, defendant Mike Walsh and 15 others executed and delivered three promissory notes payable to the order of Crawford & Hunt; one of the notes being for $600, and the other two being for $700 each. Complainants, as the Union Bank of Laingsburg, Mich., became the purchasers and owners of these three notes for value in due course before maturity and without notice. The $600 note became due September 1, 1906, payment was refused, and complainants as plaintiffs brought suit thereon in the Osceola circuit court. They recovered judgment against all of the makers on December 10, 1907, for $692.65 damages, and costs afterwards taxed at $78. On April 1, 1908, an execution in the usual form was issued on said judgment to the sheriff of said county, returnable May 1, 1908, and was returned *nulla bona*, and filed May 20, 1908. On the last-named date an alias execution was issued on such judgment to the sheriff, returnable July 25, 1908. On May 29th the sheriff made a levy on certain real estate, and recorded the certificate of such levy on June 4th, and on July 17th made a further levy on real estate, and recorded the certificate thereof on the same date. The two $700 notes came due September 1, 1907, and September 1, 1908, respectively, payment was refused, and complainants as plaintiffs brought suit thereon in the said circuit

court.     They recovered judgment against all of the
makers on December 19, 1908, for $1,730.36 damages,
and costs afterwards taxed at $74.75.     On March 27,
1909, an execution was issued in due form on such judg-
ment to the said sheriff, returnable June 1, 1909.     On
April 3d a levy was made and certificate thereof recorded
covering the same real estate as was levied upon on both
the levies on the former judgment.     These levies and cer-
tificates of levy cover and include the three pieces of real
estate involved in this suit:     (1) Lots 46, 49, 60, of Ardis
addition to the village of Marion; (2) W. $\frac{1}{2}$ of the N. W.
$\frac{1}{4}$ of section 10, town 19 N., range 7 W.; and (3) W. $\frac{1}{2}$
of the N. W. $\frac{1}{4}$ of section 15, town 19 N., range 7 W.

Afterwards, and on or about August 17, 1909, com-
plainants entered into a certain written agreement with
nine of the judgment defendants in both of these cases,
viz.:     Beckman, Bell, Richardson, French, Van Arsdale,
McNorton, Hardinger, Gilmore, and Huntwork, by which
those nine judgment defendants were to pay, and on
November 10, 1909, did pay, $1,500, or $166.66 apiece,
and in consideration for which said complainants released
such paying defendants on account of said judgments,
and discharged the said levies and certificates of levies so
far as they touched the real estate of such paying defend-
ants.     This release is claimed to have been made under
the statute.     Accordingly there remained unpaid upon
such judgments the damages and costs recovered in both
cases, together with the interest thereon and the expenses
of the levies, sheriff's fees, etc., less said $1,500 received
from the nine judgment defendants, and the bill in this
case was filed to reach property to satisfy the remainder
unpaid on the judgments, amounting to upwards of
$1,200, or such part thereof as complainants are entitled
to ask and recover.     The property specially sought to be
reached by this bill consists of the three descriptions of
land hereinbefore mentioned, which complainants claim
the right to reach, and also $200 which was paid into

court in this case on behalf of the defendent Mike Walsh, which will be referred to later.

It is the claim of the complainants that upon the payment by, and the discharge of, the nine judgment defendants referred to, there remain seven undischarged judgment defendants, viz.: Mike Walsh, F. A. Slater, C. E. Bradshaw, S. C. Boyles, J. W. Lackey, A. A. Harvey, and H. Cutler. Of these seven remaining judgment defendants, Bradshaw and Harvey removed from this State before the bill in this case was filed, and hence were not made defendants herein; and the bill alleges the issuance and return of an execution unsatisfied (thereby showing that nothing could be collected from Slater, Boyles, Lackey, and Cutler). The bill also alleges specifically that nothing could be collected from them; and the two answers filed in this case allege that all of these seven remaining judgment defendants, except Mike Walsh, were and are financially irresponsible.

The title to the real estate above mentioned stands as follows: Lots 46, 49, and 60, Ardis addition to Marion.

Mike Walsh owned this property and sold it to defendant Robert H. Manning for $700 on a land contract dated April 13, 1908. Complainants seek to reach all of the interests of Mike Walsh in this land and this land contract.

W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, section 10, 19–7.

Mike Walsh owned this property, and on July 26, 1906, deeded it to his wife, defendant Margaret Walsh, by warranty deed. Margaret gave their son, Thomas Walsh, a land contract covering this land, dated April 10, 1908. The bill charges that both of these transfers were without consideration and fraudulent, and made to defeat the rights of complainants against Mike Walsh.

W. $\frac{1}{2}$ of N. W. $\frac{1}{4}$, section 15, 19–7.

The bill claims that Mike Walsh owned this property also, and on July 26, 1906, deeded it to his wife, Margaret, by the same deed that included the land on section 10. Margaret deeded this land to their son Thomas by a deed dated November 22, 1907.

The bill also charges that both of these transfers were without consideration and fraudulent, and made to defeat the rights of complainants against Mike Walsh.

Defendants Margaret and Thomas Walsh filed a joint answer, in which they denied that the transfers from Mike to his wife, and from his wife to their son, were fraudulent as to complainants, and they also deposited $200 with the register of the court for and in behalf of Mike Walsh to cover his *pro rata* share of the two judgments.

Defendant Mike Walsh filed an answer and an amended answer, in which he, too, denied that the transfers made by himself to his wife, and by his wife to their son, were fraudulent, and confirmed and adopted the $200 with the register as a tender of his *pro rata* share of the two judgments.

None of the other defendants appeared in the case, and the usual order *pro confesso* was entered against some of them, and others were covered by a stipulation and replication, so that the question of fraud referred to and several other questions to be presently stated were before the circuit court; the testimony having been taken in open court.

Complainants made their *prima facie* case by introducing in evidence the two judgments in question, the files and records in the two law cases, and the compromise agreement with the nine judgment defendants, the several executions, levies, and certificates of levies, and the conveyances complained of, in accordance with the provisions of section 10203, 3 Comp. Laws. They also offered further evidence in support of their contention. The defendants Mike, Margaret, and Thomas Walsh were sworn and examined as witnesses, and other testimony was given in their behalf.

The circuit judge filed a written opinion in the case in which he held, and afterwards decreed, as follows:

(*a*) That both judgments in question were valid against all of the defendants therein, of which holding defendant

Mike Walsh complains; the other appellant defendants admitting the validity of the judgments.

(b) That complainants are entitled to reach the rights and interests of Mike Walsh in the lots in Marion and the Manning contract, and provided for so doing, of which the three appealing defendants complain.

(c) That complainants are also entitled to the land on section 10 because he found the deed from Mike to Margaret, and the land contract from Margaret to Thomas, to be in fraud of complainants, and set aside those transfers, of which also the appealing defendants complain.

(d) That complainants are not entitled to the land on section 15, of which appellant complainants complain.

(e) That complainants are not entitled to the $200 paid into court, of which complainants complain.

(f) That complainants are entitled to recover of and from defendant Mike Walsh only one-sixteenth part of each of both of said judgments, damages, costs, and interest computed from the dates of said judgments, respectively, of which holding complainants complain.

The complainants and the defendants Mike, Margaret, and Thomas Walsh have appealed to this court, and the foregoing propositions or holdings indicate in a general way the questions raised.

The defendant Mike Walsh has neither filed any brief nor appeared by counsel in this court.

(a) The first proposition to be considered is whether both judgments at the dates of the levies were valid and binding obligations against all the defendants in both causes. This question is only raised by the defendant Mike Walsh, and he files no brief in support of his claim. In the first case Mr. Savidge, solicitor for the appellant defendants Thomas and Margaret Walsh, filed notice of his appearance for the defendants, who had been served with process. On September 14, 1907, he filed a plea and notice of special defense as attorney for defendants. A perusal of the documentary evidence offered satisfies us that Mr. Savidge intended to appear for, and in fact acted as the attorney of, all the defendants. We have examined the oral testimony upon the subject, and we think that it appears by the preponderance of the evidence that

it was the intention of the defendants in that suit that they should be represented by Mr. Savidge. In the second suit at law, Mr. Kinney, a regular attorney, appeared for all the defendants, so signed the pleadings, and conducted the defense. None of the parties ever asked either of these attorneys to withdraw his appearance in the cases, or either of them. The court treated the defendants as represented by counsel, and a joint judgment was entered against all of the defendants in each case in the usual form. The circuit judge found that the law judgments were against all of the defendants named in those cases.

Not only as a question of fact do we think that the defendants were represented by counsel, but, as a legal proposition, we think these judgments cannot be attacked in this collateral manner. Most certainly must this be so where the parties themselves, for whom it is claimed the attorneys had no authority to appear, have made no motion or taken any steps to have said appearances vacated. We think that the attack should have been made directly in the case by the parties in interest. See 1 Freeman on Judgments, § 128; *Corbitt* v. *Timmerman*, 95 Mich. 581 (55 N. W. 437, 35 Am. St. Rep. 586); *Allured* v. *Voller*, 112 Mich. 357 (70 N. W. 1037); *Miller* v. *Smith*, 115 Mich. 427 (73 N. W. 418, 69 Am. St. Rep. 583). See Vanfleet's Collateral Attack, § 468, where that author uses this language:

"On principle, a judicial proceeding is never void because the proof of service is false in fact. Such proof is a necessary part of the record, and to permit its verity to be questioned collaterally overturns the very foundations of all judicial proceedings."

(*b*) In considering the questions involved relating to the lots in the village of Marion, it is well to consider the objection urged by the solicitor for defendants Thomas and Margaret Walsh that the bill of complaint cannot be sustained as to the first judgment, for the reason that more than one year elapsed after the execution was levied on

lands in question before the bill of complaint was filed.
The first judgment, as we have already said, was entered
December 10, 1907. An alias execution was issued and
levied upon the property in question on May 29, 1908.
Under the execution a second levy was made on the same
property on July 17, 1908. The bill of complaint was
filed November 24, 1909, more than a year and four
months after the levies. Under the rulings of this court
in *Daniel* v. *Palmer*, 124 Mich. 335 (82 N. W. 1067),
and kindred cases, that fact is fatal to these proceedings
as a bill in aid of execution as to the defendants Thomas
and Margaret Walsh, if it shall be found that they suf-
ficiently raised the question by their answer. Upon that
subject, in their joint answer, they use the following lan-
guage:

"Further answering, these defendants say that, on ac-
count of the time which has elapsed since the procuring of
said judgments, the issuing of said execution and levying
on said real estate, the complainants are debarred and
estopped from pursuing this remedy."

It is the claim of complainants' counsel that this is not
a notice of the claim now sought to be raised by these ap-
pealing defendants. Counsel concede, however, that any-
thing in an answer in equity which will apprise the com-
plainant that the defendant relies on the statute of limita-
tions will be sufficient, if such facts are stated as are nec-
essary to show that the statute is applicable. Bearing in
mind that the bill and answer refer to these judgments
and levies by their dates, we are constrained to hold that
the allegation is sufficient to raise the question as to these
two defendants who make the claim in their answer. It
will be noted, however, that the defendants Thomas and
Margaret Walsh are not interested in the lots in Marion;
they having no interest therein. The defendants Mike
Walsh and Manning are the only two defendants inter-
ested in that matter. The bill of complaint was taken as
confessed by defendant Manning, and defendant Mike
Walsh makes no claim of the statute of limitations in his

answer, and files no brief in this court. We must hold, therefore, that the first judgment, in so far as it affects the lands in which the defendants Thomas and Margaret Walsh are concerned, cannot furnish the basis of any claim against such lands. With reference to the merits of the question, we are of the opinion that as to said village lots the bill may be treated as a creditors' bill, and that the one-year statute does not apply, and that complainants are entitled to work out their equity as against defendant Manning as to those lots, and that the first judgment stands in force as to that parcel. We see no objection to a sale of those lots on the execution, thus reaching the legal title in Mike Walsh therein. *Flynn* v. *Holmes*, 145 Mich. 606 (108 N. W. 685, 11 L. R. A. [N. S.] 209). We think the circuit judge was justified in reaching the conclusion which he did as to that property, limited by what we have said above.

(*c*) We have, after perusing the record with a good deal of care, reached the same conclusion as did the circuit judge with reference to the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 10. This can only apply to the second judgment, for reasons already stated. The testimony of the witnesses and defendants upon the merits of the question was well characterized by the circuit judge in referring to Mike Walsh, Thomas Walsh, and Margaret Walsh that their testimony was both unsatisfactory and unconvincing, and by a clear preponderance of the evidence it appears that the transactions with reference to this land were in fraud of complainants, and tended to hinder and delay them in the collection of their debt.

(*d*) We are equally clear that the complainants are not entitled to recover as to the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 15. A perusal of the testimony satisfies us that the circuit judge reached the correct conclusion in regard to this parcel of land. We think it is undisputed that as early as 1902, and before any of the indebtedness involved in this litigation was contracted or incurred, the defendants Mike and Margaret Walsh deeded this land to their

son, Thomas Walsh, and delivered the instrument to him, and that the same became lost. Whether as a deed it was properly acknowledged may be a question, but that the transaction would operate as an executed land contract we have no doubt. From that time on the defendant Thomas Walsh took charge of that piece of land. He cropped it, managed it, and had the proceeds from it. It was, also, during all of the subsequent years, assessed to him, and he paid the taxes thereon; and we think this was sufficient notice to the world of his rights. The fact that in 1906, the old deed having been lost, the father and mother made a new deed to him, would not give complainants any rights therein.

(e) We concur with the action of the circuit judge with reference to the $200 which seems to have been paid into court by the defendants Thomas and Margaret Walsh, in connection with their answer, for the benefit of Mike Walsh, in case it should be accepted by complainants in full of their claim against said Mike Walsh. It was not paid in, in pursuance of any order of the court, or of any practice known to the profession. The court below did not recognize that it had any jurisdiction over the money, and, the same not having been accepted by complainants upon the terms specified in the answer, we think, defendants having withdrawn it, complainants are in no condition to ask relief in that matter.

(f) This brings us to the main controversy in this case, which is the construction which shall be placed upon the act entitled:

"An act to provide for settlements and compromises by partners and joint debtors, with their creditor or creditors." Section 10449 et seq.

In this matter we are unable to agree with the circuit judge, but we think that complainants are correct in their contention. On November 10, 1909, these two judgments stood as existing liabilities against the 16 judgment defendants for the damages, costs, and interest computed to

that date, counsel stating the amount to be substantially $2,727.22. On that date nine of the judgment defendants, before alluded to, paid $1,500, and took their discharge under the provisions of this statute. It is provided that the act shall extend to joint debtors in the same manner as to copartners, and such debtors are authorized undoubtedly to settle or compromise and be discharged from their joint indebtedness in the same manner as copartners. The effect of such settlement is, we think, covered fully by the statute itself, as follows:

"Such settlement or compromise shall be a full and complete discharge, both in law and in equity, to the debtor or debtors making such settlement or compromise, and to such debtor or debtors only, of and from all and every liability to the creditor or creditors with whom the same is made or incurred, by reason of his or their connection with such firm or copartnership; provided, however, that in case of such settlement or compromise the copartner or copartners who are not parties to the same shall be discharged from all liability to the creditor or creditors except for their joint ratable portion of such copartnership debt."

We think that the meaning of this section of the statute is plain and unequivocal as applied to this case. On November 10, 1909, prior to the settlement and compromise referred to, each of the judgment debtors stood liable to pay the entire amount of these two judgments, costs, and interest computed to that date, subject only to the proviso that the judgment plaintiffs could not collect the debt or any part thereof twice. If each judgment defendant had on that date paid his ratable portion of the two judgments, interest, and costs, he would have paid a one-sixteenth part of said $2,727.22, or $170.45. If the nine who paid the $1,500 had paid their joint ratable portion of this judgment, costs, and interest, they would have paid nine times one ratable portion, or nine times $170.45, being $1,534.05. Instead of paying their joint ratable portion, these nine defendants paid, as stated, $1,500, or $166.66 apiece, instead of $170.45 apiece, a difference of $34.05.

As to the remaining seven judgment defendants, after the payment of this $1,500 by the nine, the statute provides that they stood liable for their joint ratable portion of the entire debt. If each of these seven had then and there paid his ratable portion of the two judgments, costs, and interest computed to that date, he would have had to pay the sum of $170.45, as we have already stated. Accordingly, the joint ratable portion of these seven nonpaying judgment defendants was seven times $170.45, or $1,193.15, and to ascertain their joint ratable portion at any subsequent time a computation of interest only is necessary.

While the judgment plaintiffs had the right to collect the entire amount of both judgments, costs, and interest prior to the time of the compromise settlement from any one of the judgment debtors, after that settlement, they had the right to collect the remaining unpaid portion of these judgments, costs, and interest from the defendant Mike Walsh, or any other one of the judgment debtors who had not entered into the settlement and compromise agreement, provided, however, that the total amount that could be so collected should not exceed the joint ratable portion of the seven nonjoining judgment defendants of the whole debt as we have just pointed out. We are not concerned here as to the matter of contribution between the defendant Mike Walsh and other joint debtors. What we have said here in this connection must be qualified by what we have already said as to the right to enforce the first judgment only against the village lots aforesaid. In other words, complainants can look only to the amount due on the second judgment in dealing with the land on section 10.

The point is urged by counsel for defendants Thomas and Margaret Walsh that, the notes having been joint and several, the judgments would be the same. We do not understand that to be the rule in this State. We think the notes were merged in the judgments, and that the judgments were joint as to all the defendants therein.

A decree may be prepared in accordance with the views here expressed, awarding costs of the court below to the complainants, as provided in the decree of the circuit judge. We think there should be no recovery of costs in this court by either party, except that the appealing defendants should share the cost of the transcript of the record and the printing thereof with complainants.

STEERE, BROOKE, BLAIR, and OSTRANDER, JJ., concurred.