## DALTON *v.* MILLER.

VENDOR AND PURCHASER—DEED AS MORTGAGE—BONA FIDE PURCHASERS.

> Where, in suit to set aside deed absolute on its face but intended to operate as mortgage, proof shows that purchasers from plaintiffs' grantee had no notice of plaintiffs' interest in land, decree in favor of defendants was justified and even necessitated under 3 Comp. Laws 1915, § 11723.

Appeal from Wayne; Lamb (Fred S.), J., presiding. Submitted June 4, 1929. (Docket No. 4, Calendar No. 34,338.) Decided October 7, 1929.

As to whether deed absolute on its face but intended as a mortgage conveys legal title, see annotation in 11 L. R. A. (N. S.) 209.

Bill by Robert M. Dalton and another against Louis H. Miller, John P. and Michael T. Dinan and others to declare a deed from plaintiffs to defendants Miller and another a mortgage and set aside a deed from defendants Miller and another to defendants Dinan. From decree dismissing amended bill as to defendants Dinan, plaintiffs appeal. Affirmed.

*Fritz L. Radford* and *George B. Murphy,* for plaintiffs.

*Lloyd L. Axford* and *William E. Tarsney,* for defendants Dinan.

North, C. J. The defendants Louis H. Miller and Abe Moss were associated in business, and incident to a transaction which has nothing to do with the issues in this case, the plaintiff Robert A. Dalton on January 23, 1923, gave two promissory notes amounting to $625 which were held by Miller. To secure payment of these notes Dalton and his wife executed a warranty deed of 40 acres of valuable land in Wayne county, in which deed Miller was named as grantee. The land conveyed was then subject to two mortgages aggregating $11,200. The warranty deed was delivered to Moss, and he gave back to Dalton a written agreement reciting that upon the payment of the note, the deed would be surrendered to Dalton. Miller's name was signed to this agreement by Moss. At the same time Moss agreed orally that he would not record the deed. Notwithstanding this oral agreement, Moss recorded the deed. In July following Miller sold and conveyed the land by warranty deed to the defendants John P. Dinan and Michael T. Dinan for $30,000. About nine months thereafter Mr. Dalton learned of this transaction and thereupon the plaintiffs filed a

bill of complaint by which they sought to have their deed to Mr. and Mrs. Miller declared to be a mortgage and to have the deed from the Millers to the Dinans set aside. The bill of complaint as first drawn was upon the theory that the Dinans were innocent purchasers who had been deceived as to the character of Millers' title, and the plaintiffs offered to reimburse the Dinans to the full amount of their investment in this property as a condition of securing cancellation of the deed under which they held. Later an amended bill was filed in which plaintiffs charged that the defendants Dinan were not *bona fide* purchasers of the land but that they and all the other defendants had full and complete knowledge of plaintiff's rights in the property. It is the claim of the plaintiffs that the defendant Fleischer represented the Millers and the defendant Heavenrich represented the Dinans in the transaction wherein the latter purchased this property. The defendants Dinan deny that Heavenrich was their agent in this transaction and also deny that they had either actual knowledge or constructive notice of plaintiffs' interest in this land.

Upon the hearing in the circuit it was found the conveyance from the plaintiffs to Miller, though a deed in form, was a mortgage in fact and that this was known to all the defendants except the Dinans. But the trial court did not find from the proof that Heavenrich acted as the agent for the Dinans in the transaction in which they obtained title and therefore the trial court held that the knowledge which Heavenrich had could not be made the basis of charging the Dinans with constructive notice. The trial court also found that the proofs did not establish that the Dinans had actual knowledge of the plaintiffs' rights in this property. A decree was

taken dismissing plaintiffs' bill of complaint as to the defendants Dinan, and it is from this part of the decree that the plaintiffs have appealed.

The hearing in the circuit consumed a week's time and the record is quite voluminous. It would be use-less to attempt a complete resumé, but a careful consideration of all the record forces the conclusion that the trial judge's disposition of the case was the one justified and even necessitated by the proof. In the main, plaintiffs' claim is that the Dinan brothers had actual notice or at least are chargeable with notice of plaintiffs' rights in the property—(1) be-cause Miller testified that he specifically advised John P. Dinan relative thereto at the time the trans-action was being closed; (2) because as Dinans' alleged agent Heavenrich was fully advised as to the facts; (3) because Attorney Axford, who repre-sented the Dinans, had notice of the Dalton interest; and (4) because the price paid by them for the prop-erty was inadequate to such an extent as to put Dinans on inquiry as to the *bona fides* of their grantors' title.

Miller's testimony that he told Mr. John P. Dinan that he (Miller) had an interest in this property only as security for the payment of money due him, is inconsistent with his conduct, it was largely given in response to leading questions, and not at all con-vincing. Even at the trial of the case Miller still insisted that he owned the property he sold to the Dinans, and that in disposing of it he acted in good faith. He testified:

"I was told I owned it. If I had felt that I did not own I would not have sold it. * * * I knew positively that I owned this property."

Notwithstanding this, the plaintiffs would have us

believe that at the closing of this deal Miller, who had $15,000 coming from the transaction, informed John P. Dinan that he (Miller) had title to the land which he was selling only as a matter of security. We agree with the trial judge that Miller's testimony in this regard challenges one's faith in his credibility. Miller's pretension of being an apostle of truth and honesty does not check with the fact that notwithstanding he had known for months at the time of the trial that he obtained incident to this deal upwards of $11,000 to which he had no right on any possible theory, still he did not at any time suggest making restoration to the rightful owner of this money. We also find, as did the circuit judge, that the proof sustains the contention of the Dinan brothers that Heavenrich was not their agent in this transaction; nor is there proof from which knowledge or notice of the plaintiffs' title can be charged to Attorney Axford and through him to his clients, who were the grantees in this deed.

As to the inadequacy of the price of $30,000 paid for this property, there is a decided conflict in the testimony. A year or so later it was doubtless worth two or three times that amount; but values in this locality were rapidly rising at this time owing to local improvements, either actual or prospective, and to an almost unprecedented growth in and about the city of Detroit. Incident to closing the deal, Mr. John P. Dinan was told by Mr. Miller, according to Miller's testimony:

"I had it (the 40 acres) from the Michigan Auto Sales and (was) forced to keep it because I had no use for the property. I told him it was forced on me. Those are the very words I used. I told John Dinan the property was forced on me."

This was a reasonable explanation to Dinan why Miller was willing to accept a conservative price. In the first bill of complaint plaintiffs allege that Miller had sold the equity in this property to the Dinans for $19,000; but plaintiffs do not intimate that this price was inadequate to such an extent that it should have put the vendees on guard as to the vendors' title. Instead plaintiffs in their first bill of complaint take the position that the Dinans were innocent purchasers. It also appears from the record that some time prior to the transaction out of which this litigation arises, the exact date not being given, a party wishing to buy this or similar property offered Mr. Dalton, through the witness George W. Myer, $40,000; and this offer does not seem to have been rejected, at least primarily, on the ground it was wholly inadequate. As against this, it appears that some time in 1924 the 200 acres of similar adjoining land was sold for $1,500 per acre. There is also expert testimony that this particular 40 was worth and could have been sold for $2,000 an acre in 1923 or 1924. In view of the conflict, the proof was not such as to justify a finding that the Dinans should have been put on guard as to their grantors' title because of the inadequacy of the price for which they purchased. We are of the opinion that the record as a whole sustains the contention of the defendants Dinan that they are innocent purchasers of this property. After having heard the witnesses in open court, where he had a better opportunity to judge their credibility than we, the circuit judge said:

"I am satisfied  *  *  *  that upon this record there is not anything to convince the court that Dinan brothers took that (property) in any other

way than as purchasers in good faith and for value, and as to them the bill should be dismissed."

The Michigan statute provides:

"When a deed purports to be an absolute conveyance in terms, but is made or intended to be made defeasible by force of a deed of defeasance or other instrument for that purpose, the original conveyance shall not be thereby defeated or affected, as against any person other than the maker of the defeasance, or his heirs or devisees, or persons having actual notice thereof, unless the instrument of defeasance shall have been recorded in the registry of deeds of the county where the lands lie." 3 Comp. Laws 1915, § 11723.

"A deed absolute, given as a mortgage, but which contains no suggestion of its security character, conveys the legal title to the grantee. *Howell v. Wieas,* 232 Mich. 227; *Jordan v. Diltz,* 240 Mich. 512. *Contra, Flynn v. Holmes,* 145 Mich. 606 (11 L. R. A. [N. S.] 209); *Restrick Lumber Co. v. Wyrembolski,* 164 Mich. 71. Unless the defeasance instrument is recorded, conveyance from the grantee to a subsequent purchaser in good faith and without notice would pass title." *Skupinski v. Provident Mortgage Co.,* 244 Mich. 309.

Other questions are presented by this record, but after considering them we are of the opinion that they do not affect the merits of this case. The decree taken in the circuit court is affirmed, with costs to the defendants Dinan against the appellants.

FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred. The late Justice FELLOWS took no part in this decision.