VANCE *v.* STATE.

(*Nashville*, December Term, 1949.)

Opinion filed February 10, 1950.

HAM PATTERSON & W. A. McTIGHE, of Memphis, for plaintiff in error.

J. MALCOLM SHULL and NAT TIPTON, Assistant Attorneys General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

The plaintiff in error and one Dewey King were jointly indicted for larceny and receiving stolen property. King obtained a severance and later pleaded guilty to an attempt to commit a felony and was sentenced to the county workhouse for eleven months and twenty-nine days. Vance was tried and convicted, the jury fixing his punishment at not more than three years in the penitentiary. From this conviction he appealed to this Court and assigned the following errors: (1) "The evidence preponderates in favor of his innocence and against the verdict." (2) "The Court erred in admitting over defendant's objection the confession of Dewey King, co-defendant and a State's witness." (3) "The Court erred in admitting over the objections of the defendants, the testimony of John Shea, the attorney for Dewey King relative to what was said by the defendant in the office of Mr. Shea and one of the defendant's attorneys at that time, Mr. W. Preston Battle."

The plaintiff in error, who will be later referred to as the defendant, had been engaged in the furniture business in the City of Memphis for a time prior to his arrest upon the charge of larceny of furniture from Hungerford and Company, manufacturers of furniture.

His codefendant was an employee of Hungerford and Company.

Prior to his arrest along with King he had made purchases from Hungerford of a low grade type of furniture called "Huco" or "Nuco". He was never permitted to buy from the company its first-grade line of mahogany furniture. His purchases, consisting of "salvage furniture", was on a cash basis; Dewey King was a shipping clerk and was not authorized to receive payment for anything.

The Hungerford Company, conceiving the idea that they were losing some of their first-grade furniture by and through some surreptitious methods, consulted the city detective force of Memphis and they at once commenced to watch the company's plant during early hours of the morning. On the morning of the defendant and King's arrest the detectives observed a truck of the defendant drive up to the Hungerford plant. It was soon followed by a Ford car driven by the defendant Vance. The officers, who were stationed approximately 150 yards away, could not tell if the truck was being loaded with furniture. They followed the truck to the place of business of Vance. In the meantime Vance had gone in another direction. By the time the detectives arrived at the place of business of Vance, the latter made his appearance. When they inquired of him as to what was in the truck, he replied "salvage furniture". But when it was opened it was found to contain several cartons of high-grade furniture which he, Vance, had never been allowed to purchase.

The State's case rested largely, if not entirely, upon the testimony of King, who was an accomplice, and corroborating testimony. The substance of King's testi-

mony is that he and Vance conceived the idea of obtaining high-grade furniture from Hungerford at a salvage price and that Vance would pay him personally for such merchandise. Pursuant to this arrangement the defendant had sent his truck to Hungerford on several occasions, loaded it with high-grade furniture, without making any record whatever of the transaction, and later on Vance would stop by and make payment; they had this understanding on the night before their joint arrest, and that Vance was to pay him approximately $400.00 for this load of furniture. When King was arrested he had on his person a bank book showing numerous deposits in a bank in Memphis, which corresponded in point of time with dates upon which Vance had made payments to him. On the day following his arrest King made a complete confession to police officers in the presence of Vance. One of the officers then and there asked Vance if King's statement was true and he replied that it was true. But when the defendant was asked if he wished to make a formal statement in writing he declined to do so until he could consult an attorney.

The substance of Vance's testimony is a complete denial of any criminal intent. He testified that he had frequently paid King for furniture and that he regarded every purchase made as a legitimate sale by King; that on the evening prior to the transaction which resulted in his arrest he was notified by King to come to the plant early and to bring his Negro truck driver along to assist in loading the furniture, which he did; that he expected to pay for it later. On cross-examination he admitted that he got no bill of lading as he had on previous occasions. He positively denied having made any agreement to buy high-grade furniture at low-grade

prices, and pay King as detailed in the latter's confession. One of Vance's truck drivers testified that upon several occasions he had paid King money for furniture when he would get it in a legitimate way. Numerous witnesses testified that Mr. Vance had an excellent reputation for truth and veracity.

In rebuttal the State called Mr. John T. Shea who testified, over strenuous objection of defendant's counsel, that some weeks prior to the date of the trial, the defendant, who was then represented by counsel other than the ones who were then trying the case, had a conference in his office in which he and King, and the defendant and his two attorneys were present; that he heard the defendant admit that King's confession was true. The witness stated very positively that the conference was at the instance of the defendant's counsel, and he had King at his office at their request; that he did not represent Vance at that time and had never acted as his attorney.

The contention made in the first assignment of error that the evidence preponderates in favor of the defendant's innocence would be well taken if King's testimony was without corroboration. But the record shows sufficient corroboration as follows, to wit, proof of King's confession in the presence of Vance, the bank book of King showing deposits on dates which correspond with dates of previous transactions between King and Vance, the possession of *high-grade* furniture in the truck and Vance's statement that it was "salvage furniture". We think the testimony of the officers and that of Mr. Shea to the effect that Vance admitted the truth of King's confession is sufficient corroboration. *Winfree* v. *State,* 174 Tenn. 72, 123 S. W. (2d) 827. See

also *Stanley* v. *State*, Tenn. Sup. 222 S. W. (2d) 384. This assignment is overruled.

The second assignment, complaining of error in the admission of King's confession in evidence, is overruled for the following reasons. First, it was voluntary and made in the presence of Vance. It was competent as an admission against interest since the defendant admitted it was true. Second, because King was called as a witness for the State and defendant was thereby given ample opportunity to cross-examine him as to everything contained in the confession.

The third assignment of error has given the Court the greatest concern. Counsel for the defendant have challenged the action of the trial court in permitting Mr. Shea, counsel for King, to testify as to admissions made by Vance at a conference held in Mr. Shea's office. The insistence is made that any statement made by the defendant at that time was privileged, and what was said should have been excluded from the jury. Counsel for the defendant, in arguing the question before us, did so with great earnestness and sincerity and also with the utmost respect toward the trial court and Mr. Shea. They had a very deep feeling that he should not have testified against their client. But he entertained a contrary view, as did the trial court, on the ground that he was not of counsel for the defendant at any time and that the conference was called at defendant's request. The counsel for Vance asked for the conference to interview King to know his attitude and to plan a defense for their client accordingly. We are convinced from the record that neither Mr. Shea nor his client had any interest in the outcome of the conference. They were not engaged in planning a joint defense in which all parties

had an interest. It was later that defendant discharged his counsel and employed his present counsel to try the case.

■ ■ By the great weight of authority, in fact we find nothing to the contrary, the right of the defendant to have Shea's testimony excluded on the ground that defendant's statement was a privileged communication depends primarily upon the relationship between them, i. e., attorney and client. It is settled law everywhere that in the absence of such relationship there is no privilege, because there is no confidence reposed and none violated. 58 Am. Jur. (Witnesses) Section 473, p. 265; 28 R. C. L. 555. The rule is further stated by Wigmore, 3d Ed., Sec. 2311, quoting Lord Eldon: "The moment confidence ceases, privilege ceases." "This much is universally conceded." Our own cases of *Johnson* v. *Patterson*, 81 Tenn. 626, 629, and *Sims* v. *Banks of Commerce & Trust Co.*, 14 Tenn. App. 672, support the text. Communications between counsel and client (where the relationship exists) are not privileged when made in the presence of third parties. Thus in *People* v. *Andre*, 153 Mich. 531, 117 N. W. 55, 56, it is held: "A statement made by a client while at a conference with his attorney *and others* is not confidential, and is not privileged, and the attorney may testify thereto." To the same effect see 50 Cent. Dig., Witnesses, Sections 761, 764, 765.

Counsel for the defendant contend that the Court should indulge the presumption that the statement made during the conference was of a confidential nature. But no case is cited in support of this insistence. Mr. Wigmore (Sec. 2311) says: "No *express* request for secrecy, to be sure, is necessary, but the mere relation of attorney and client does not raise a presumption of con-

fidentiality", citing cases. In *Smale* v. *United States,* 7 Cir., 3 F (2d) 101, certiorari denied by U. S. Sup. Ct., 267 U. S. 602, 45 S. Ct. 462, 69 L. Ed. 808, it was held: "Communication voluntarily made to codefendant's attorney, whom defendant never intended to employ as his attorney, is not privileged, in the absence of joint defense." Citing *McNamee* v. *First Nat. Bank of Roseburg,* 88 Or. 636, 172 P. 801.

■ Counsel for the defendant strongly rely upon *Chahoon* v. *Commonwealth,* 21 Grat., Va., 822, as supporting their contention that Shea's evidence should have been excluded on the ground of privilege. But the case is easily distinguished from the one now before us. There Chahoon was jointly indicted with two others upon a conspiracy to rob an estate. Each had separate counsel, but the three were collaborating in preparing a *joint defense.* At a conference wherein the three were present, two being represented by their counsel while Chahoon's counsel was absent, Chahoon was asked if he denied signing a certain receipt to which he replied he did not and would not. This statement was sought to be used against him on the trial. But it was excluded on the ground of a privileged communication made by him in the preparation of a *joint defense.* In the course of the opinion it was said: "*They* (Chahoon and his codefendants) *had the same defense to make, the act of one in furtherance of the conspiracy, being the act of all, and the counsel of each was in effect the counsel of all,* though for the purposes of convenience he was employed and paid by his respective client." (Italics ours.) The words we have italicized in the Chahoon case clearly indicated that there was a community of interest between all the counsel and their clients. We think it only

fair to say that had Mr. Shea and counsel for the defendant been in conference for the purpose of mapping a joint defense for thir clients, as in *Chahoon* v. *Commonwealth, supra,* all statements made by defendant at that time came very close to being considered as confidential. This was intimated in *Smale* v. *U. S., supra,* but not expressly decided. Now, as we have heretofore pointed out, the conference in Shea's office was not to prepare a joint defense. It conclusively appears that King was making no defense at all and Shea had not acted for Vance, or presumed to give any advice about any matter connected with the trial. The weight of authority supports the ruling of the trial judge.

 The final insistence made on behalf of the defendant is that the trial judge was in error in not charging the jury as to every offense embraced in the indictment. The State's reply is that the crime was in all respects completed and there was no evidence upon which such a charge could be made. The value of the property stolen was approximately $400.00. This fact being undisputed the court should not be reversed for failing to instruct the jury as to petit larceny. The omission complained of is no more than an instruction upon the application of evidence, and was not a matter of substantive law on what facts would warrant the defendant's conviction, such as is discussed in another case (*Turner* v. *State,* Tenn. Sup., 219 S. W. (2d) 188) decided at this term.

 Contention is made that the court erred in failing to charge the jury that the confession of King could not be considered in passing upon the guilt or innocence of the defendant. There was no special request offered to clarify this phase of the charge and we think this was

necessary before it would constitute reversible error. Nor was the trial judge requested to limit the confession when the same was offered in evidence by the State. But in practical effect the general charge cured this omission, the court using the following language: ". . . but the jury should take the testimony of an accomplice with a great deal of caution and scrutinize it with care, and the jury cannot convict a defendant upon the testimony of an accomplice unless there is evidence in the case independent of his testimony corroborating his testimony."

We have given careful consideration to every question made in this appeal and find that the record is free from any reversible error.

Affirmed.

All concur.