Danny Lee **STRONG**, Appellant,

v.

The **STATE** of Texas, State.

No. 2-86-248-CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 4, 1987.

---

Alley & Alley, and T. Richard Alley, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Fort Worth, and Chris Marshall and Betty Stanton, Assistants, for state.

Before BURDOCK, HILL and LATTIMORE, JJ.

## OPINION

HILL, Justice.

Danny Strong appeals from his conviction by a jury of the offense of murder. *See* TEX.PENAL CODE ANN. sec. 19.02(a) (Vernon 1974). After Strong pled true to three enhancement paragraphs, the jury assessed his punishment at ninety-nine years in the Texas Department of Corrections.

On appeal, Strong contends that the trial court erred by admitting into evidence a letter which he wrote to the lawyer of a friend who was charged with the same offense. He contends that admission of the letter was barred by the attorney-client privilege. In a second point of error, Strong urges that the trial court erred by not granting his motion for mistrial after his friend, in answering a question non-responsively, stated that Strong was on parole at the time of the murder.

We affirm, because we find that the admission of Strong's letter was not barred by the attorney-client privilege, since the lawyer to whom the letter was written was not Strong's lawyer; and, although he was the lawyer of Strong's accomplice, the letter was not made as a part of the preparation of a joint defense. We further find that the trial court's instruction to disregard the friend's comments about Strong's being on parole was sufficient to cure any error.

Strong began living with Deana Sweeney in the summer of 1985. In December of that year, Strong and Sweeney ended up in a coffee shop following an evening of bar-hopping. They struck up a conversation at the coffee shop with the deceased, Robert Thomas. Since they had been drinking, the couple asked Thomas if they could spend the night with him. Thomas agreed, and the three went to his nearby apartment. After Strong went to sleep, Thomas made a pass at Sweeney, saying that he was not going to sleep by himself.

When Strong woke up and discovered what was going on, he started fighting Thomas, then tied up Thomas with an extension cord. He tied the cord tightly around Thomas's neck. Strong and Sweeney then left town.

In point of error number one, Strong contends that the trial court erred in admitting into evidence a letter which he wrote to Sweeney's lawyer, urging him to quit his efforts to talk Sweeney into testifying against Strong. Strong asserts that the admission of the letter was in violation of the attorney-client privilege.

Rule 503 of the Rules of Criminal Evidence provides that a client has a privilege of preventing any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client and made between the client and a lawyer representing another party in a pending action and concerning a matter of common interest therein. TEX.R.CRIM.EVID. 503(b)(3).

This rule was derived from rule 503 of the Federal Rules of Evidence. It has been said by one commentator that the privilege as set forth in rule 503(b)(3) of the Federal Rules of Evidence "occurs in the 'joint defense' or 'pooled information' situation where different lawyers represent clients who have some interests in common." H. Wendorf, & D. Schlueter, *Texas Rules of Evidence Manual*, rule 503(b)(3) at 391 (1983) (Advisory Committee's Note). "The rule does not apply to situations where there is no common interest to be promoted

by a joint consultation, and the parties meet on a purely adversary basis. *Vance v. State*, 190 Tenn. 521, 230 S.W.2d 987 (1950), *cert. denied* 339 U.S. 988, 70 S.Ct. 1010, 94 L.Ed. 1389. *Cf. Hunydee v. United States*, 355 F.2d 183 (9th Cir.1965)." H. Wendorf, & D. Schlueter, *supra*, at 391; *See* TEX.R.CRIM.EVID. 503(b)(3).

The letter which Strong sent to Sweeney's attorney was not to assist in the preparation of a joint defense but an effort to urge Sweeney's lawyer to urge Sweeney to participate in a joint defense as opposed to taking the action which she did, which was to plead guilty and testify against him. Since the communication was not made as part of the preparation of a joint defense, since Sweeney was making no defense at all; since Sweeney's lawyer was never the lawyer for Strong; and since Strong's position was adversarial to Sweeney's, the admission of Strong's letter was not precluded by the attorney-client privilege. *See Vance*, 230 S.W.2d at 991. Strong urges that he thought that Baldwin was somehow representing him in presenting a joint defense. The letter itself shows Strong's knowledge that the lawyer was representing Sweeney's interest and not his. Further, Strong was aware of the fact that he had his own attorneys who had been appointed. We overrule point of error number one.

■ Strong urges in point of error number two that the trial court erred in overruling his motion for mistrial after Sweeney had, in a non-responsive answer, informed the jury that Strong was on parole at the time of the murder. Strong's objection to the answer was sustained, the trial judge instructed the jury to disregard it, then overruled Strong's motion for mistrial. We hold that the trial court's instruction cured any harm to Strong caused by the comment. *See Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.1987). We overrule point of error number two.

The judgment is affirmed.