

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00191-CR

CHADWICK DARAY HEATH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-22-28584

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

# MEMORANDUM OPINION

A Fannin County jury convicted Chadwick Daray Heath of stalking[1] and, after finding the State's punishment-enhancement allegations true, assessed a sentence of twenty-seven years' imprisonment. On appeal, Heath argues that (1) the jury's verdict is not supported by sufficient evidence, (2) the trial court erred by denying his motion for mistrial after the State mistakenly played an inadmissible, unredacted recording instead of the redacted recording, and (3) the trial court erred by refusing to submit the lesser-included offense of harassment.

We find that the jury's verdict is supported by legally sufficient evidence, the trial court did not abuse its discretion by denying the motion for mistrial, and Heath was not entitled to a lesser-included-offense instruction. As a result, we affirm the trial court's judgment.

## I.	The Jury's Verdict of Guilt Is Supported by Legally Sufficient Evidence

Heath was accused of stalking Marquista Owens, the mother of his two young children. In his first point of error, Heath argues that the evidence is legally insufficient to support the jury's verdict of guilt. To examine this point, we must review the entire record.

### A.	The Evidence at Trial

The record established that Heath and Owens were in a dating relationship for several years and lived together in Dallas, Texas, with their children.[2] Carol White Okusolubo, Owens's cousin, described the relationship between Heath and Owens as "kind of toxic." Owens, who was hesitant to testify, said there were several incidents between her and Heath that made her

---

[1]*See* TEX. PENAL CODE ANN. § 42.072(b) (Supp.).

[2]Owens's other biological children, who were not related to Heath, also lived in the apartment.

2

feel as if Heath would hurt her. Although Owens did not elaborate about most of those incidents, she testified that she left Heath and moved from Dallas because of "an altercation . . . [that] was just too much for [her] to handle."

According to Owens, on March 18, 2021, an altercation in their shared apartment became physical, Heath threatened her by pointing a firearm in her direction, and she became "really frightened." Owens called 9-1-1, but Heath "just threw the phone," causing her to hang up. Owens again called the police, was able to leave the apartment, and obtained an emergency protective order against Heath "for him to stay away from [them]."

That month, Owens moved into her family home next door to her grandmother's house in Trenton, Texas, "[t]o be safe." When the emergency protective order expired, Owens became "[n]ervous." She testified that she received harassing and "aggressive[]" text messages from Heath and told him "[c]onstantly" to stop sending the messages, but to no avail. Owens said, "It was such a nightmare."

Okusolubo said that Heath drove to Owens's house sometime in May and "kept blowing his horn" in the middle of the street. Okusolubo said that she spoke with Heath because Owens "was fearful" of him. Owens testified that, on May 17, 2021, "[Heath] was at [her] house, and all of [her] yard stuff was gone, and it made [her] nervous." Owens clarified that items from her yard were thrown into an empty yard across the street. On seeing that, Owens drove to the Trenton Police Department (TPD) and spoke with investigator Greg Rookwood. According to Rookwood, Owens was "[v]ery kind of frantic" and "[v]ery concerned" while reporting "[t]hat

3

her ex had been to her house and [had] thrown her children's bikes and other items across the street." Rookwood said that Owens wanted to get a protective order against Heath.

Heath had left by the time Owens returned home from speaking with Rookwood but came back after 10:00 p.m., after Owens and her children were sleeping. According to Owens, Heath "banged on" her bedroom window and asked to be let in. Owens testified that Heath was "already agitated" and "was not talking like his self [sic]," which made Owens feel "[s]cared." According to Owens, Heath was "pacing back and forth by [her] window, talking outside his self, mad, agitated." After pacing for fifteen minutes, Heath threatened Owens and said that he would force her and the children to come out of the house. According to Owens, Heath went "to his car and [got] something and pour[ed] it out . . . [o]n the corner of the house" by her window, making Owens believe they "were going to be hurt . . . [by] a fire to [her] home." Owens became "terrified" and called the police. She told the jury that, before Heath retrieved the liquid, her "level of fear . . . was at a seven or eight," but once she saw the liquid, it "was like, off the charts" because she thought "[there was] about to be a fire."

Owens's 9-1-1 call, which was received at approximately 11:00 p.m., was played for the jury. On the call, Owens reported that Heath was "outside [her] door being real aggressive" and asked responders to come immediately. In tears, Owens said that she had made a complaint earlier with Rookwood but, even so, Heath was "hollering" outside of her house. Owens told the dispatchers that her daughter said Heath was trying to break the window.

Marcus Puccini, a sergeant with the Fannin County Sheriff's Office, arrived on the scene, where he found Owens "scared to death" and "scared for her life." William Griffin, a TPD

4

officer, described Owens as "very upset and emotional." He knew Owens was afraid of Heath because of her "repeated statements" that she was "just worried and scared for her kids, scared for her safety." On Puccini's body-camera recording, Puccini noted that a protective order following an assault had been issued against Heath but was expired. He also saw that Owens's belongings from her front yard were strewn in the empty lot across the street. Owens told Puccini that her encounters with Heath had been going on for four months. Puccini testified that Owens "was terrified, she was crying, wiping her eyes." He continued, "I c[ould] hear the tremor in her voice." Owens told Puccini that Heath had started pouring a liquid on the ground.

Puccini questioned Heath, who said he had arrived at Owens's house at 11:00 a.m., stayed until 7:00 p.m., and returned later that night. Body-camera footage showed that Heath was carrying a bottle of rubbing alcohol and olive oil, which he said was prayer oil.[3] Heath, who told the officers that he had been trying to see his children for three weeks, denied throwing any of Owens's property into the neighboring yard. Griffin issued a criminal-trespass warning to Heath and warned him not to return.

Despite the criminal-trespass warning, Owens testified that "there was no change" and that Heath continued to return to her home "[a]ll the time." Owens said she felt harassed by Heath and that "[i]t was very overwhelming."

Griffin testified that, on May 27, he saw Heath at a local convenience store and asked him why he was in town. This encounter was recorded on Griffin's body camera. When Heath

---

[3]Heath also claimed that the alcohol was for prayer.

5

said he was going to deliver a "Coke" and money to Owens, Griffin warned him about the criminal trespass and told him not to go. Heath admitted Owens told him that he had scared her.

On May 31, 2022, while on another call, Rookwood said he encountered Heath at Owens's residence. On the body-camera recording of that encounter, Rookwood reminded Heath that he could not be near the property and asked him to leave and not return. Rookwood testified that "Heath could not be around Ms. Owens," including for reasons other than the criminal trespass.

After hearing this evidence, the jury convicted Heath of stalking.

### B.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "Our rigorous review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part*, 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Here, the State alleged in the indictment that Heath,

> on more than one occasion, and pursuant to the same scheme or course of conduct that was directed specifically at Marquista Owens, . . . knowingly engage[d] in conduct that the defendant knew or reasonably should have known that the

7

complainant would regard as threatening bodily injury or death to the complainant or that an offense would be committed against the complainant's property, namely: threaten[ing] the complainant with bodily injury or death; threaten[ing] the complainant with bodily injury or death using a firearm; interfer[ing] with an emergency call; remov[ing] property from the complaint's [sic] residence; threaten[ing] to burn property; threaten[ing] to kill himself; threaten[ing] property damage; going to complainant's residence multiple times and harassing, yelling, or causing a disturbance; attempt[ing] to go to complainant's residence; attempt[ing] to break a window at complainant's residence; pouring an unknown liquid around complainant's residence; and tell[ing] the complainant he will make complainant come outside the residence or "he would die, and she would too."

And the defendant's conduct caused the complainant to be placed in fear of bodily injury or death or in fear that an offense will be committed against the complainant's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

And the defendant's conduct would cause a reasonable person to fear bodily injury or death or that an offense would be committed against the complainant's property or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

## C.  Analysis

As applied to this case, the statutory text for the offense of stalking specifically refers to the offense of harassment but requires additional factors. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231 (amended 2023) (current version at TEX. PENAL CODE § 42.072(a)(1)).[4]  Under the applicable portion of the harassment statute, Section 42.07, a person commits the offense of harassment "if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: . . . threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against . . . the person's property." *See* Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021

---

[4]Section 42.072 was amended by the Texas Legislature in 2023. *See* Act of May 25, 2023, 88th Leg., R.S., ch. 947, § 2, 2023 Tex. Sess. Law Service 3028, 3029 (codified at TEX. PENAL CODE § 42.072) (effective Sept. 1, 2023). This amendment took place after Heath's offense. As a result, we apply the former law applicable to Heath's offense.

Tex. Gen. Laws 385, 385 (amended 2023) (current version at TEX. PENAL CODE § 42.07(a)(2)).

In contrast, a person commits the offense of stalking if he,

> on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>
> > (1)    constitutes an offense under Section 42.07, or that the actor knows or reasonably should know the other person will regard as threatening:
> >
> > > (A)    bodily injury or death for the other person;
> > >
> > > . . .
> > >
> > > (C)    that an offense will be committed against the other person's property;
> >
> > (2)    causes the other person . . . to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
> >
> > (3)    would cause a reasonable person to:
> >
> > > (A)    fear bodily injury or death for himself or herself . . .
> > >
> > > (C)    fear that an offense will be committed against the person's property; or
> > >
> > > (D)    feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231 (amended 2023).

While harassment can be accomplished by one threat reasonably likely to alarm the recipient, stalking requires a scheme or course of conduct that the actor knowingly engages in. *See* Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 385 (amended

9

2023); Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231 (amended 2023); *Segura v. State*, 100 S.W.3d 652, 656 (Tex. App.—Dallas 2003, no pet.). Unlike harassment, which merely requires alarm to the recipient, stalking also requires the recipient of the threat to (1) be placed in fear of bodily injury or death, (2) be placed in fear that an offense will be committed against a person's property, or (3) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *See* Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 385 (amended 2023); Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231 (amended 2023). It also requires such fear or feelings to be reasonable under the circumstances. *See* Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231 (amended 2023).

As a result, under the hypothetically correct jury charge, the State had to prove that (1) Heath, (2) "on more than one occasion, and pursuant to the same scheme or course of conduct that was directed specifically at" Owens, (3) knowingly engaged in conduct listed in the indictment, (4) which Heath knew or reasonably believed that Owens would regard either as (a) threatening bodily injury or death, (b) threatening an offense against her property, or (c) harassing, annoying, alarming, abusing, tormenting, embarrassing, or offensive, (5) that caused Owens to have such fears or feelings, and (6) that would cause a reasonable person to have such fears or feelings. *See Ploeger v. State*, 189 S.W.3d 799, 808 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Here, the State established that Owens had reason to fear Heath. He had threatened her life during an argument in Dallas by pointing a firearm in her direction.[5] The event caused Owens to seek a protective order and move to Trenton with her children to ensure her safety. Even after moving, Owens testified that she received aggressive and harassing text messages from Heath, who did not listen to her pleas to stop sending such messages. Okusolubo testified that, even though Owens feared Heath, he continued travelling to Trenton. The jury heard evidence that items from Owens's yard were thrown into a neighboring lot. Even though Heath denied disturbing Owens's property, the jury could have rejected his self-serving testimony. The evidence showed that, on May 17, 2021, Heath remained on Owens's property from 11:00 a.m. until 7:00 p.m., causing her enough fear to contact the TPD. Heath returned to Owens's home that night and was "hollering" in an aggressive manner, causing Owens to fear for her safety. When he started pouring a liquid on her home, Owens feared that Heath would burn her house down. Even after TPD issued a criminal-trespass warning to Heath, he failed to abide by it, even though he admitted that he had scared Owens. Owens said Heath returned to her home "[a]ll the time," and the record shows that he was caught in the act on May 31.

---

[5]"*In a prosecution for stalking, each party may offer testimony as to all relevant facts and circumstances that would aid the trier of fact in determining whether the actor's conduct would cause a reasonable person to experience a fear described by Section 42.072(a)(3)(A), (B), or (C), Penal Code . . . .*" Act of May 19, 2011, 82d Leg. R.S., ch. 591, § 3, 2011 Tex. Gen. Laws 1432, 1433 (current version at TEX. CODE CRIM. PROC. art. 38.46(a)). Such evidence "*include[s] the facts and circumstances surrounding any existing or previous relationship between the actor and the alleged victim.*" *Id.* In a multifarious point, Heath complains that, although the Dallas event "was relevant and admissible under [A]rticle 38.46" of the Texas Code of Criminal Procedure, "[i]ncluding the Dallas event as an allegation in the indictment . . . was erroneous." There was no objection to the State's indictment. Even so, for purposes of our legal-sufficiency analysis, we consider only the events occurring in Trenton and determine whether those events established the scheme or course of conduct contemplated by the stalking statute. Regarding those events, the Dallas event constitutes a relevant fact from which the jury could determine the reasonableness of Owens's fear of Heath.

11

We find that the totality of the evidence shows that Owens knowingly engaged in a course of conduct, listed in the indictment, that was specifically directed at Owens. Because of the protective order previously issued against him in Dallas and Owens's replies to Heath's harassing text messages, Heath knew or should have known that Owens would be threatened by his acts or, at the very least, would feel harassed, alarmed, or annoyed each time he returned to her home or sent aggressive text messages. Owens testified that she did have such feelings, and the jury was free to find that any reasonable person in her circumstances would have felt the same way. As a result, we conclude that sufficient evidence supports the jury's verdict and overrule Heath's first point of error.

## II. The Trial Court Did Not Abuse Its Discretion by Denying the Motion for Mistrial

In his second point of error, Heath argues that the trial court erred by denying a motion for mistrial.

### A. Factual Background

The State introduced Exhibit 6, which was the body-cam footage from May 31. On the recording, Rookwood told Owens that he was going to report Heath's failure to abide by the criminal-trespass warning to Heath's parole officer. As soon as this statement was made, the prosecutor stopped the footage, asked to approach the bench, and said, "I had it redacted. I might have got the wrong copy. I did not do this intentionally."

Heath objected that there was "inadvertent disclosure of 404 and 609 material," asked "for an instruction and, second to that, a mistrial." The trial court immediately instructed the jury to "disregard that exhibit," but denied the motion for a mistrial. In its written instructions,

12

the trial court further instructed the jury to "not consider for any purpose any offer of evidence that was stricken by the Court" and reminded them that they had to "treat it as though [they] had never heard it."

## B.     Standard of Review

We review the trial court's denial of a motion for mistrial for abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement, that is, when the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016) (plurality op.) (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)).

A mistrial is an extreme remedy, to be sparingly used "for a narrow class of highly prejudicial and incurable errors" committed during the trial process.  *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018).  "Therefore, a mistrial should be granted only in cases where the 'reference was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds.'"  *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009) (per curiam) (quoting *Rojas v. State*, 986 S.W.2d 241, 250 (Tex. Crim. App. 1998)).

## C.     Analysis

Here, nothing suggests that the State played the unredacted version of Exhibit 6 on purpose to inflame the jury.  The prosecutor's statement that the exhibit was played by mistake was not challenged.  Also, because "[o]rdinarily, a prompt instruction to disregard will cure

13

error . . . even one regarding extraneous offenses," we cannot say that the trial court abused its discretion by concluding that it was possible to remove any harmful impression left on the jury by instructing them to wholly disregard the unredacted Exhibit 6. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam); *see Young*, 283 S.W.3d at 878; *Campos v. State*, 589 S.W.2d 424, 428 (Tex. Crim. App. [Panel Op.] 1979) (an instruction to disregard evidence of an extraneous arrest was sufficient to cure any error). This is because "[t]he law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury." *Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011); *see Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

As a result, we conclude, as have many Texas courts, that the trial court's instruction to disregard the reference to parole contained in Exhibit 6 cured the error. *See Murray v. State*, 24 S.W.3d 881, 892 (Tex. App.—Waco 2000, pet. ref'd) (instruction to disregard sufficient to cure error from officer's testimony that he contacted the defendant's parole officer when searching for him); *Strong v. State*, 739 S.W.2d 506, 508 (Tex. App.—Fort Worth 1987), *aff'd*, 773 S.W.2d 543 (Tex. Crim. App. 1989) (instruction to disregard cured witness's remark that the defendant was on parole); *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992) (error in admission of testimony that defendant "had recently been released from the penitentiary" was cured by an instruction to disregard that testimony); *Crawford v. State*, 595 S.W.3d 792, 804 (Tex. App.— San Antonio 2019, pet. ref'd) (instruction to disregard witness's statement that the defendant "had just gotten out of prison" was sufficient to cure any error); *see also Brezina v. State*, No. 07-22-00110-CR, 2023 WL 1415623, at *3 (Tex. App.—Amarillo Jan. 31, 2023, pet. ref'd)

(mem. op., not designated for publication) (error in reference to defendant's parole status was cured by instruction to disregard); *Davila v. State*, No. 13-19-00068-CR, 2020 WL 5051370, at *2–3 (Tex. App.—Corpus Christi–Edinburg Aug. 27, 2020, pet. ref'd) (mem. op., not designated for publication) (instruction to disregard cured error in officer's testimony that defendant had "an active parole warrant"); *Hill v. State*, No. 05-18-00490-CR, 2019 WL 3162462, at *2 (Tex. App.—Dallas July 16, 2019, pet. ref'd) (mem. op., not designated for publication) (instruction to disregard cured any error from statement that defendant had a "parole violation"). Consequently, we overrule Heath's second point of error.

### III. Heath Was Not Entitled to a Lesser-Included-Offense Instruction

Next, Heath argues that the trial court erred by failing to submit the lesser-included offense of harassment in the jury charge.

#### A. Standard of Review

"We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

Our review of "whether a jury must be charged on a lesser included offense" also involves "a two-step analysis." *Armstrong v. State*, 179 S.W.3d 84, 86 (Tex. App.—Fort Worth 2005, no pet.) (citing *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998)); *see Cavazos v.*

*State*, 382 S.W.3d 377, 382–83 (Tex. Crim. App. 2012). "The first step is to decide whether the offense is a 'lesser included offense' as defined in article 37.09 of the code of criminal procedure." *Armstrong*, 179 S.W.3d at 86 (quoting TEX. CODE CRIM. PROC. ANN. art. 37.09). "An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 37.09(1)).

Here, we find the first step met since the record shows that the proof required to establish that Heath stalked Owens would necessarily subsume the elements of harassment. *See* Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 385 (amended 2023); Act of May 24, 2013, 83d Leg., R.S., ch. 1278, § 2, 2013 Tex. Gen. Laws 3231, 3231 (amended 2023).

In the second step, we consider "whether there is some evidence that would permit a rational jury to find that, if the appellant is guilty, he is guilty only of the lesser offense." *Cavazos*, 382 S.W.3d at 383. "If the evidence raised at trial casts doubt on the greater offense, a lesser-included offense instruction allows the jury to vote for a rational alternative." *Id.* at 385. "While it is true that the evidence may be weak or contradicted, the evidence must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if Appellant is guilty, he is guilty only of the lesser-included offense." *Id.* "Meeting this threshold requires more than mere speculation—it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.*

16

**B.    Analysis**

"Stalking requires actions (1) on more than one occasion; (2) pursuant to the same scheme or course of conduct; and (3) directed specifically at one person." *Segura*, 100 S.W.3d at 656. "The elements of harassment, on the other hand, may be satisfied with only one offense and without actions directed at one specific person." *Id.*  Heath argues that "the jury here could have rationally concluded there was only one incident, May 17, where Owens was threatened or felt threatened by Heath."  We disagree.

Owens testified that, after her move from Dallas, but before May 17, Heath would leave items for her and the children while they were away, making Owens feel "[n]ervous."  He also sent her harassing and aggressive text messages.  Even after Owens spoke to Rookwood about obtaining a protective order against Heath on the afternoon of May 17, Heath continued to return to Owens's home "[a]ll the time," including on the night of May 17, without an invitation.  Okusolubo said that Heath drove to Owens's house sometime in May, that he "kept blowing his horn" in the middle of the street, and that Owens feared Heath.  On May 27, when Griffin caught Owens in Trenton, Heath admitted Owens told him he had scared her.  Yet, on May 31, Heath again returned to Owens's home.  On several occasions, Owens testified that she felt harassed by and scared of Heath.

Heath argues that "[a] reasonable juror could have . . . declined to believe Owens felt any threat from Heath based upon him stopping by her house after May 17."  "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather there must be some evidence directly germane to the lesser-included offense for the finder of fact to

17

consider before an instruction on a lesser-included offense is warranted." *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023) (alteration in original) (quoting *Bullock v. State*, 509 S.W.3d 921, 925 (Tex. Crim. App. 2016)).[6] In this case, we find that there was no affirmative evidence from any source suggesting that Heath committed harassing acts only on one date. *See Coalwell v. State*, No. 04-16-00358-CR, 2017 WL 4014707, at *5 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op., not designated for publication) ("That the jury *might* have believed only a single incident of harassment occurred is not affirmative evidence that the harassing [texts] were sent, not on multiple dates, but on only one date."). Also, Heath points to no evidence from which a rational jury could find that he was not acting pursuant to the same scheme or course of conduct that was directed at Owens.

Because nothing showed that, if Heath were guilty, he was only guilty of harassment, we find that Heath was not entitled to the lesser-included-offense instruction. Accordingly, we overrule his last point of error.

---

[6]Moreover, the question is whether Owens felt threatened *or* harassed, annoyed, or alarmed. Owens testified that she felt "uneasy" around Heath, including when he came to her house on May 31 without an invitation. Owens said that, on that date, Heath "was pretty animated," and she told him, "You can't be here." She further testified that, since that day, she was "not on guard as much." At the very least, the evidence showed that Owens was annoyed or alarmed by Heath's presence on May 31.

18

## IV.     Disposition

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:     May 21, 2024
Date Decided:       June 14, 2024

Do Not Publish